Mrs. Georgia Ann TOMS,
Plaintiff-Appellant,

v.

COUNTRY QUALITY MEATS, INC.,
etc., et al., Defendants-Appellees.

Mr. Thomas E. TOMS,
Plaintiff-Appellant,

v.

COUNTRY QUALITY MEATS, INC.,
etc., et al., Defendants-Appellees.

No. 77–3136.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1980.

A. D. Smith, III, Henry D. Frantz, Jr., D. Freeman Hutton, Atlanta, Ga., for plaintiffs-appellants.

James H. Fisher, Atlanta, Ga., for defendants-appellees.

Ben L. Weinberg, Jr., F. Clay Bush, Atlanta, Ga., for Country Quality Meats, Inc.

Lowell S. Fine, Atlanta, Ga., for Cudahy Co.

Robert L. Pennington, Stanley A. Coburn, Atlanta, Ga., for Am. Beef Packers, Inc. & Glover, Inc.

N. Forrest Montet, Malcolm P. Smith, Atlanta, Ga., for Royal Packing Co.

Before TUTTLE, VANCE and KRAVITCH, Circuit Judges.

TUTTLE, Circuit Judge:

This case involves an action for damages in contract and tort for injuries allegedly sustained as a result of purchasing and consuming poisoned meat. The plaintiffs, Thomas and Georgia Ann Toms sued in federal court on diversity grounds pursuant to 28 U.S.C. § 1332(a), Country Quality Meats, Inc., Cudahy Co. a/k/a Cudahy Foods Co., American Beef Packers, Inc., American Beef Packing International, Inc., Glover, Inc. a/k/a Glover Packing Co., and Royal Packing Co. The district court dismissed the suit on the grounds that the parties lacked complete diversity of citizenship and that the plaintiffs had failed to allege or prove a principal place of business for the corporate defendants. From that judgment, the Toms appealed. We now reverse that judgment.

The Toms are residents of Georgia. There is no allegation that any of the defendants, except for Country Quality Meats, Inc.,[1] had its principal place of business in Georgia or was incorporated there. See 28 U.S.C. § 1332(c).[2]

The defendants contended at the trial level and again here that defendant Country Quality Meats, Inc., incorporated in Delaware but qualified to do business in Georgia, had its principal place of business in Georgia. Because the plaintiffs are also Georgia residents, they contended there was not complete diversity of citizenship. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The plaintiffs argued that Country Quality's principal place of business was in Texas where its officers, directors and records were located and where policy and managerial decisions were made. The district court agreed with the defendants.

The record shows that in 1973, the Toms purchased 333 pounds of meat from a Country Quality Meats store in Georgia. Subsequently Mrs. Toms became seriously ill. She alleged the illness was caused by arsenic in the meat which she bought from the store.

Both Country Quality and Red Barn were part of a system of over 60 similar corporations set up in the wholesale and retail meat sale business. All of these corporations were created with help by Brueggemeyer & Wolfe, Inc. (B&W), had management-dealership contracts with B&W and had the same officers,[3] directors, and shareholders. B&W, a company organized to provide financial accounting and managerial services to other corporations, was incorporated in Texas and had its offices in Grand Prairie, Texas. Separate dealership contracts were executed with each small corporation for managerial services and B&W received a percentage of the gross receipts. Each of

1. According to the record, the store in question, called "Country Quality Meats," was actually operated by Red Barn Meats, Inc. Red Barn was a corporation almost identical to Country Quality Meats, Inc., a separate corporation. Both were incorporated in Delaware but qualified to do business in Georgia. An amendment substituting Red Barn for Country Quality would relate back, so the issues are the same. The corporation in this part of the opinion will be referred to as Country Quality.

2. § 1332(c) says in part:

For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . .

3. All of the officers were domiciled in Texas.

the meat sales corporations was incorporated in a separate state from B&W but the by-laws were virtually identical to the other sales companies. These small companies had their own staff, although a regional B&W sales manager provided managerial assistance.[4] Major accounting functions were performed by B&W.

These local companies, including Country Quality, had local bank accounts for daily use and a second account in Texas from which B&W drew funds for managerial operations. These small corporations paid local property taxes on the assets which they retained, although the property taxes were compiled and paid from Texas as a service of B&W. Federal income taxes for Country Quality were prepared in Texas by B&W.

B&W had the power to remove employees from the smaller corporation to its own payroll; performed all legal work for the sales corporations; formulated some aspects of business policy, including furnishing a list of outlets from whom the small corporations could buy their meat; and had all sales reports, time cards and payroll sheets mailed to them. Insurance for the sales corporations was carried through an umbrella/blanket policy obtained by B&W. Initial operating capital was obtained at least partially through low interest loans from B&W.

■ This Court in the recent case of *Village Fair Shopping Center v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir. 1979) set out the applicable standards for determining a corporation's principal place of business under § 1332(c). First, a review of a trial court's determination of the principal place of business of a corporation is limited by the clearly erroneous test. *Id.* at 434.[5]

■ Second, this Court has adopted the "total activity" test as the legal standard for determining a corporation's principal place of business, a test which calls for a review of the total corporate activity. *Id.* at 434. This test incorporates both the "place of activities" and the "nerve center" tests.[6]

The "total activity" test is not an equation that can provide a simple answer to the question of a corporation's principal place of business. *See* Wright, Miller and Cooper, § 3625 at 803 (1975). Each case necessarily involves somewhat subjective analysis. Applying the test to the facts here, we find the trial court's determination that Country Quality had its principal place of business in Georgia to be clearly erroneous.

■ While it is true that Georgia was where this corporation came into contact with the public, where the daily activities of the corporation occurred, and where its tangible assets were located, we find that the activity which occurred in Texas was more significant because Country Quality was essentially run from there.

The highest official at the Country Quality store in Georgia said that he considered B&W and Country Quality "the same thing." Although it is not determinative

---

4. At oral argument, appellant's counsel, in response to a question, said that the top employee at the Country Quality store in Georgia, Jerry Barnes, "wore an apron," meaning that he was primarily engaged in meat cutting activities. Barnes testified at deposition that B&W and Country Quality were "the same thing" and that every day he sent a statement to B&W in Texas. (Appendix p. 109).

5. As that court pointed out, however, the burden of showing that the trial judge's findings of fact were clearly erroneous is not as heavy as it would be if credibility of witnesses were a factor in the court's decision. See *Sicula Oceanica, S.A. v. Wilmar Marine Eng. & Sales Corp.*, 413 F.2d 1332, 1333 (5th Cir. 1969).

6. The "nerve center" test places general emphasis on the locus of the managerial and policymaking functions of the corporation. *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y.1959). The "place of activities" test focuses on production or sales activities. *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3rd Cir. 1960). Wright, Miller & Cooper, as well as other commentators have recognized that the two tests are reconcilable. *See* Moore & Weckstein, Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited, 77 Harv.L.Rev. 1426, 1443–1445 (1964); 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3625 at 791–792 (1975).

for diversity purposes,[7] it is nevertheless significant that the income tax forms listed Grand Prairie as the return address for Country Quality. Accounting functions for Country Quality were performed out of executive offices in Texas including computation of payroll checks. Insurance policies were purchased by B&W. The facts show that operating control of Country Quality clearly came from B&W in Texas where the major business policy decisions were made. Managerial personnel were supplied and approved by B&W. Given all these factors, Country Quality's principal place of business was in Texas.

The trial court also ruled that the plaintiffs had failed to allege or prove the principal place of business of any of the corporate defendants, citing *McGovern v. American Airlines, Inc.*, 511 F.2d 653 (5th Cir. 1975). Later motions to amend by the plaintiffs were denied by the trial court in a second order on the grounds that since Country Quality Meats, Inc. had its principal place of business in Georgia, an amendment substituting Red Barn, which had identical status, would not affect the court's lack of subject matter jurisdiction. Because of that ruling, the trial judge apparently did not reach the question of the amendments alleging the principal places of business of the corporations. However, having reversed the trial court's determination that Country Quality had its principal place of business in Georgia, amendments alleging the principal place of business of the defendants would cure the deficiencies in the pleadings.

██ It is true that when jurisdiction depends on citizenship, citizenship should be "distinctly and affirmatively alleged." 2A Moore's Federal Practice § 8.10 at 1662; *McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975). However, the facts as presented here would certainly bring appellant within 28 U.S.C. § 1653 which states that: "Defective allegations of jurisdiction may be amended, upon terms,

in the trial or appellate courts." This Court has held that this section should be construed liberally. *McGovern*, 511 F.2d at 654. Other courts have agreed, holding that the section is to be construed to permit an action to be brought if it is at all possible to show that jurisdiction exists. *See Miller v. Davis*, 507 F.2d 308, 311 (6th Cir. 1974); *Cox v. Livingston*, 507 F.2d 392, 393 (2d Cir. 1969). Given this standard and our holding that Country Quality (a/k/a Red Barn Meats) is not a Georgia corporation, we think the plaintiffs should have been allowed to amend their complaint.

Therefore, the dismissal of the trial court is REVERSED. This case is REMANDED for further proceedings.

---

7. *See* Note, *A Corporation's Principal Place of Business for Federal Diversity Jurisdiction*, 38 N.Y.U.L.Rev. 148, 159 (1963).