**Ed FREEMAN and wife Sharon Freeman, Plaintiffs-Appellees Cross-Appellants,**

**v.**

**NORTHWEST ACCEPTANCE CORPORATION, Defendant-Appellant Cross-Appellee.**

No. 83–2739.

United States Court of Appeals, Fifth Circuit.

March 4, 1985.

Ross, Banks, May, Cron & Cavin, Clinton John Mayer, Houston, Tex., for defendant-appellant cross-appellee.

Elick & Elick, John V. Elick, Bellville, Tex., for plaintiffs-appellees cross-appellants.

Before GEE, POLITZ and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

In August 1980, Sharon and Ed Freeman brought an action for conversion of gravel against Northwest Acceptance Corporation (Northwest). The Freemans filed their complaint in the United States District Court for the Southern District of Texas, premising jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). They alleged themselves to be Texas citizens and Northwest to be an Oregon corpo-

ration with its principal place of business in Oregon. Although Northwest was the only named defendant, the conduct complained of was that of Northwest's wholly-owned subsidiary, First Commercial Credit Corporation (First Commercial), a Colorado corporation with its principal place of business in Colorado. The Freemans grounded Northwest's liability for First Commercial's conduct on the former's alleged status as alter ego of the latter.

The case was tried to a jury; it found for the Freemans on their theory of the case and assessed damages against Northwest as the alter ego of First Commercial. Both parties have appealed from the judgment entered by the trial court, which awarded the Freemans $43,910 but denied them punitive damages. Because, for reasons to be noted, we entertain serious doubts that the trial court had subject matter jurisdiction of the case, we vacate and remand the action for further proceedings.

■■■ Diversity under § 1332(a)(1)[1] must be complete; each plaintiff must have citizenship different from that of each defendant. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063 (5th Cir.), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981). This rule applies fully to parties joined under Rule 19, Fed.R.Civ.P. *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1177 (5th Cir. 1984). When it appears from the record that diversity jurisdiction may have been lacking, it is the duty of the court of appeals to raise and consider the issue *sua*

*sponte. Id.* In this circumstance, the "court of appeals has discretion to delve into the record in search of evidence establishing diversity jurisdiction" or lack thereof. *Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 n. 1 (5th Cir.1984) (per curiam). A search of the record in this case establishes a likely absence of complete diversity between the parties on either of two alternative theories. Both are grounded initially on our serious doubts regarding the Freemans' allegation of Texas citizenship. The evidence, including particularly that provided by the Freemans in their depositions, strongly suggests that they were Colorado citizens when they filed their complaint in 1980.[2]

■ "For purposes of federal diversity jurisdiction 'citizenship' and 'domicile' are synonymous." *Hendry v. Masonite Corp.,* 455 F.2d 955 (5th Cir.1972). The definition of 'domicile' has not changed from that set forth more than a century ago by the Supreme Court: " '[a] residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.' " *Mitchell v. United States,* 88 U.S. (21 Wall) 350, 352, 22 L.Ed. 584 (1875), *quoting Guier v. O'Daniel,* 1 Binn., 349, n. As stated more recently by this Court,

> Residence in fact, and the intention of making the place of residence one's home, are essential elements of domicile. Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In such circumstances, the actual fact of

---

1.  **§ 1332. Diversity of citizenship; amount in controversy; costs**

    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

    (1) citizens of different States;

    \*    \*    \*    \*    \*    \*

    (c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further,* That in any direct action against the

insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

2.  The citizenship of the parties on the date the complaint was filed determines the existence of diversity jurisdiction. *Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 166, 59 L.Ed. 360 (1914); *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.1974).

residence and a real intention of remaining there, as disclosed by his entire course of conduct, are the controlling factors in ascertaining his domicile. *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954). Domicile is thus evaluated in terms of objective facts, *Wasson v. Northrup Worldwide Aircraft Service, Inc.,* 443 F.Supp. 400, 404 (W.D.Tex.1978); "statements of intent are entitled to little weight when in conflict with facts." *Hendry, supra,* 455 F.2d at 956. The objective facts to be evaluated in determining the Freemans' domicile are these.

Ed Freeman was born in Texas. He attended high school and college in Colorado, where he began his working life on a ranch owned by his family. He has had a Colorado driver's license "off and on" since attaining driving age. He has also, at times, had a Texas driver's license. The Freemans have owned residential and business property in Colorado since at least 1970. In 1973 they bought the Colorado property on which the gravel at issue here was kept; this gravel was to provide retirement income for them. They began building the Colorado house in which they now live in 1978; Mrs. Freeman moved into it in July 1980, the year their complaint was filed. She has had a Colorado driver's license since 1978. Between 1975 or 1976 and 1980, the Freemans rented property in Texas on a month-to-month basis; they also lived in Texas and New Mexico motels during this period. Ed Freeman has never listed his business in a Texas telephone directory; it has been listed only in Colorado, although he has had residential listings in both states. During the 1979–1980 school year, the Freemans' one school-age child attended school in Colorado. They have filed no tax returns of any kind whatever since 1974 and are not registered to vote in any state.

It is difficult to conclude from these facts that Sharon and Ed Freeman were ever anything but sojourners in Texas. That they could have had an intention to remain in Texas while building a house in Colorado—into which Mrs. Freeman actually moved before the filing of the complaint in this case—is very doubtful. They have never had any permanent ties to Texas; all of their permanent ties have been and remain with Colorado. For all of these reasons, it seems likely that the Freemans were citizens of Colorado in August 1980. On remand, the court should decide whether they were or not.

Should they be found to have been citizens of Colorado when their complaint was filed, it is obvious that diversity would be destroyed by the presence of a defendant with Colorado citizenship. There was, or should have been, such a defendant.

The complaint in this case alleged First Commercial to be the alter ego of Northwest. It is undisputed that the relationship between the two corporations was that of parent corporation (Northwest) and subsidiary corporation (First Commercial). It is also undisputed that the corporations were not formally merged; rather, each retained its status as an incorporated entity. Two lines of cases support the proposition that in these circumstances Northwest should be viewed as a citizen of Colorado for diversity purposes. The first is exemplified by *John Mohr & Sons v. Apex Terminal Warehouses, Inc.,* 422 F.2d 638 (7th Cir. 1970), in which the court stated that "a consolidated corporation may, under certain circumstances, be found to have the citizenship of each of the pre-consolidation, separate, corporate components." *Id.,* 422 F.2d at 641. Cases in which diversity has been defeated on this theory include *Williams v. New York Central Railroad Co.,* 125 F.Supp. 842 (N.D.Indiana 1954) ("settled that a plaintiff suing a corporation which is incorporated in more than one state may not invoke the [diversity] jurisdiction of the Federal courts in the state of his citizenship where one of the states of the defendant's incorporation is that same state") (citing *Jacobson v. New York, N.H. & H.R. Co.,* 206 F.2d 153 (1st Cir.1953), *aff'd* 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954); *Starke v. New York, Chicago & St. Louis R. Co.,* 180 F.2d 569 (7th Cir.1950) (where one corporation formed by

consolidation of two or more corporations, consolidated corporation is citizen of each state in which any constituent corporation was citizen); *Smith v. Cleveland, C., C. & St. L. Ry. Co.*, 170 Ind. 382, 81 N.E. 501 (1907).

These cases are not directly on point, grounded as they are on statutes pursuant to which the defendant railroads were consolidated. Their logic, however, is fully applicable to the facts of today's case. Northwest and First Commercial operated as a consolidated corporation in Colorado. Although each retained its own articles of incorporation and its own accounts, those accounts were kept in the same office by the same employees, who may have worn two hats but who received their salaries from one payroll. Despite the absence of statutory consolidation, Northwest and First Commercial were no less consolidated in fact than were the railroads in the cases cited above.

We are not required to ignore the reality of this situation. The Supreme Court has stated (in a different but not unrelated context) that "[i]n such a case the courts will not permit themselves to be blinded or deceived by mere forms of law, but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." *Chicago, Milwaukee, & St. Paul Railway Co. v. Minneapolis Civic & Commerce Assoc.*, 247 U.S. 490, 501, 38 S.Ct. 553, 557, 62 L.Ed. 1229 (1918); *accord, Bangor Punta Operations v. Bangor & A.R. Co.*, 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974) (*citing, inter alia, Chicago, supra*).

Our Court has similarly refused to elevate form over substance. In *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313 (5th Cir.1980), for example, the defendant was held to be a citizen of Texas, where its parent corporation was located, rather than of Georgia, where it had all of its tangible assets and where it ran a meat store. The parent corporation had not been joined in the suit, yet the Court looked to its actual control of the defendant corporation, and its actual responsibility for the conduct complained of, to determine the defendant's citizenship for diversity purposes.

*Toms* bears strong parallels to this case. The Freemans did not join First Commercial as a defendant, although First Commercial's direct responsibility for the conduct complained of is undisputed. Northwest's responsibility for that conduct results solely from its *de facto* consolidation with First Commercial in Colorado. Under the reasoning of *Toms*, First Commercial's Colorado citizenship should be imputed to Northwest because First Commercial was directly responsible for the offending conduct. The same result obtains under the reasoning of the railroad cases. Northwest, as a constituent of an effectively consolidated corporation with Colorado citizenship, should itself be deemed a Colorado citizen in suits arising from the actions of the consolidated entity. This is such a suit; Northwest ought therefore to be held a Colorado citizen.

This conclusion is supported by a second line of cases upholding the exercise of *in personam* jurisdiction over a foreign parent corporation on the basis of the local activities of its subsidiary. "The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'" *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983), *quoting* 2 J. Moore & Lucas, *Moore's Federal Practice* ¶ 4.25[6] at 4–273 (2d ed. 1982) (citations omitted). *Accord, Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 420 (9th Cir. 1977); *Leach Co. v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183, 184 (7th Cir.1968) (where alter ego relationship existed, entities were one for purposes of jurisdiction, venue, and service of process). Although these cases refer to *in personam* rather than subject matter jurisdiction,

their rationale applies with equal force to the latter. Indeed, it would be irrational to hold that a parent and a subsidiary have been fused for purposes of *in personam* jurisdiction, *see Hargrave, supra*, 710 F.2d at 1160, but remain separate for purposes of subject matter jurisdiction. Recognizing fusion as fusion for all jurisdictional purposes makes good sense; *see Asher v. Pacific Power & Light Co.*, 249 F.Supp. 671, 677–78 (N.D.Cal.1965); it also furthers the intent of congress "to minimize and reduce the caseload of federal courts based upon diversity" by providing in 28 U.S.C. § 1332(c) for multiple corporate citizenship. *Delalande, Inc. v. Fine*, 545 F.Supp. 268, 271 (S.D.N.Y.1982), *citing Egan v. American Airlines, Inc.*, 324 F.2d 565, 566 (2d Cir.1963); *see generally* S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.CODE CONG. & AD.NEWS 3099, 3101–02.

The conceptual underpinnings of both lines of cases are similar. When two corporate entities act as one, or are in fact one, they should be treated as one for jurisdictional purposes. One court has followed this reasoning in the context of diversity jurisdiction. In *Barnett v. Borg-Warner Acceptance Corp.*, 488 F.Supp. 786 (E.D.Arkansas 1980), plaintiff Barnett, an Arkansas citizen selling campers through an Arkansas corporation, financed the campers by entering into security agreements with Borg-Warner Acceptance Corporation of Arkansas (BWAA), also an Arkansas corporation. Barnett brought an action against BWAA's parent corporation, Borg-Warner Acceptance Corporation of Delaware (BWAD), a Delaware corporation, to recover damages under the Arkansas usury statute. Diversity jurisdiction was alleged under § 1332. BWAD moved to join BWAA as an indispensable party. Barnett countered by asserting that joinder was unnecessary because BWAA and BWAD were "essentially one and the same company." *Id.*, 488 F.Supp. at 494. The court did not find this argument compelling:

> Assuming arguendo that [BWAD] and [BWAA] are treated as a single entity, that fact alone would destroy diversity jurisdiction. If [BWAD] and [BWAA] are treated as a single entity, the October 30, 1970 incorporation of [BWAA] amounted to a second or dual incorporation of the parent Delaware corporation. [BWAD] would thus be a multistate corporation incorporated in Delaware and Arkansas with its principal place of business remaining in Chicago. [BWAD] would become a citizen of Arkansas for purposes of federal diversity jurisdiction, because of its dual incorporation.... The language of [28 U.S.C. § 1332(c) ] is clear. A corporation is considered the citizen of *any* State by which it has been incorporated.

*Id.* (emphasis in original) (citations omitted). The facts of *Borg-Warner* parallel in all relevant respects those of the instant case. The *Borg-Warner* court's reasoning from these facts is consistent with and a logical extension of our reasoning in *Toms;* the lines of cases discussed above support both holdings. Accordingly, we hold here that on the present record it appears that Northwest, as alter ego of First Commercial, acquired the Colorado citizenship of First Commercial for purposes of subject-matter jurisdiction of this action.

■ A contrary conclusion can be reached only by blind adherence to form and equally blind disregard of the facts. The reality of the situation here presented is that plaintiffs who are likely Coloradans have taken advantage of corporate formalities without corresponding substance to maintain in federal court an action against a Colorado corporation for conduct occurring wholly in Colorado. Federal diversity jurisdiction was never meant to encompass such actions; "it was never intended to extend to local corporations which, because of a legal fiction, are considered citizens of another state." S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S. CODE CONG. & AD.NEWS 3099, 3102. Our holding is accordingly limited to those instances in which imputing the citizenship of a subsidiary to its parent and alleged alter ego serves the congressional purpose

of denying a federal forum to actions wholly local in character.

■ Dismissal of this action for lack of diversity would be warranted on an alternative ground; First Commercial should have been joined as an indispensable party under Rule 19, Fed.R.Civ.P. The question of First Commercial's joinder was not raised below;[3] such failure does not, however, result in waiver, *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir.1980), and this Court may consider the issue on appeal. *United States v. Sabine Shell, Inc.*, 674 F.2d 480, 482 (5th Cir.1982). The Court may also raise the issue *sua sponte. Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968).

■ First Commercial is clearly a person "to be joined if feasible" under Rule 19(a). Its "presence is critical to the disposition of the important issues in the litigation. [Its] evidence will either support the complaint or bolster the defense." *Haas v. Jefferson National Bank*, 442 F.2d 394, 398 (5th Cir.1971). The Freemans seek to impose liability on Northwest not for its own acts, but for those of First Commercial; thus, as in *Haas*, First Commercial "becomes more than a key witness whose testimony would be of inestimable value. Instead [it] emerges as an active participant in the alleged conversion." *Id.*, 442 F.2d at 398. First Commercial was more than an active participant in the conversion alleged by the Freemans; it was the primary participant. Case law in this and other circuits uniformly supports the proposition that joinder of the subsidiary is required in such a situation. *See, e.g., Dernick v. Bralorne Resources, Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981) ("[f]ailure to join the subsidiary in such circumstances would be improper"); *Glenny v. American Metal Climax, Inc.*, 494 F.2d 651, 654 (10th Cir.1974); *Amarillo Oil Co. v. Mapco, Inc.*, 99 F.R.D. 602, 607 (N.D.Tex.1983); *Soanes v. Baltimore & Ohio Railroad Co.*, 89 F.R.D. 430, 432 (E.D.N.Y.1981); *Barnett v. Borg-Warner Acceptance Corp., supra*, 488 F.Supp. at 789–90; *E.H. Crump & Co. v. Gatewood*, 497 F.Supp. 549, 552–53 (E.D.Arkansas 1980); *Japan Petroleum Co. v. Ashland Oil Co.*, 456 F.Supp. 831, 836, 847 (D.Delaware 1978). *See also Action Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78, 81 (1st Cir.1982) (parent that played "substantial role" was indispensable party to action against subsidiary); *Armco Steel Corp. v. United States*, 490 F.2d 688, 690–91 (8th Cir.1974) (joinder of parent corporations would be ordered if parents were required to participate in remedy); *Hanna Mining Co. v. Minnesota Power and Light Co.*, 573 F.Supp. 1395, 1399 (D.Minnesota 1983) (parents and subsidiary were indispensable parties where both had identical interests in subject of action, *citing Reserve Mining Co. v. EPA*, 514 F.2d 492, 534 (8th Cir. 1975) ); *Heinrich v. Goodyear Tire and Rubber Co.*, 532 F.Supp. 1348, 1359 (D.Md. 1982) (joinder of subsidiary not necessary where liability premised only on parent's acts).

The Freemans are by no means the first plaintiffs to use the alter ego doctrine in an attempt to avoid joinder of a nondiverse party. *See, e.g., Soanes, Borg-Warner, Japan Petroleum, supra.* The tactic has met with singularly small success. Language from *Lang v. Colonial Pipeline Co.*, 266 F.Supp. 552 (E.D.Pa.1967), is often cited in this context:

> [T]he plaintiffs have cited no cases to us and our research has disclosed none where the courts have overlooked the separate identity of a wholly owned subsidiary in order to avoid being ousted of its diversity jurisdiction where that party is indispensable or needed for a full and just adjudication of the controversy.

*Id.* at 554, *quoted in E.H. Crump & Co. v. Gatewood, supra*, 497 F.Supp. at 551. *Accord, Glenny, supra*, 494 F.2d at 655 (Su-

---

**3.** Although Northwest asserted throughout these proceedings that the Freemans brought their action against the wrong entity, the right one being First Commercial, there is nothing on the record to indicate that Northwest made any attempt to have First Commercial joined as a co-defendant.

preme Court decisions reject "alter ego" theory as basis for retaining jurisdiction; court not compelled to retain jurisdiction where diversity satisfied only by piercing corporate veil); *Mapco, supra,* 99 F.R.D. at 604 (creation of diversity jurisdiction one of the least compelling reasons for disregarding corporate entity). On this reasoning, courts have not hesitated to dismiss cases in which a non-diverse subsidiary has been found an indispensable party, especially when plaintiffs have an alternative forum in state courts. *See, e.g., Doty v. St. Mary Parish Land Co.,* 598 F.2d 885, 888 (5th Cir.1979) (presence of state forum "compelling" in joinder cases, *citing Broussard v. Columbia Gulf Transmission Co.,* 398 F.2d 885 (5th Cir.1968)).

■ It is unclear whether a state forum is available to the Freemans; their claim may be time-barred in Colorado. This possibility does not, however, affect our conclusions, for "[i]f it be true that the statute of limitations would prevent the beginning of a new action in the state court, that fact cannot confer jurisdiction upon a court of the United States, in the absence of a showing of diverse citizenship." *Gilbert v. David,* 235 U.S. 561, 568, 35 S.Ct. 164, 166, 59 L.Ed. 360 (1914). There has been no such showing here. If the Freemans were Colorado citizens and so was Northwest, or, alternatively, so was First Commercial, an indispensable party, then the Freemans' case must be dismissed for lack of diversity; it is elementary that defects of subject-matter jurisdiction cannot be waived. 13 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3522 at 46–47 (1984).

Concluding, we wish to make clear that, in the foregoing observations, we make no finding of fact whatever; that is not our function. Our writing is based on the present record, which focuses only obliquely on the matters that we have discussed, and other evidence may cast a different factual light on the citizenship of any or all of the parties. We speak only to the law to be applied by the trial court when it shall have settled the facts.

REVERSED and REMANDED.