889 F.2d 1084
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NEW RIVER LUMBER COMPANY, INC., Plaintiff-Appellee,
v.
Jack S. GRAFF, Defendant-Appellant.
 No. 88-2863.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1989.
Decided Nov. 6, 1989.
 
 Donald Gordon Hammer (Burke, Graybeal and Hammer, on brief) for appellant.
 Thomas G. Hodges (Archibald A. Campbell, Hodges & Campbell, on brief) for appellee.
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 In 1983, the appellee, New River Lumber Company, entered into a contract with Ellen Olinger to cut and remove all the mature timber from her 140-acre Smyth County, Virginia farm. In April 1984, after logging roads were constructed and approximately 9,000 board feet of timber had been cut and removed, the land was sold to the appellant, Jack S. Graff. At the time of this purchase, appellant was aware that his land was subject to the New River contract. He, however, had resolved not to honor that prior right. Such truculence was quickly communicated to the appellee. After negotiations between the parties failed to resolve the issue, David Fisher, president of New River Lumber, attempted to enter the farm to survey the lumbering conditions. Upon entry, Fisher was met by the appellant wielding a twelve-gauge shotgun. At that time the appellant made it clear that under no circumstances would New River be granted entry upon the property.
 
 
 2
 The appellee then brought this diversity action to vindicate its rights under the contract. Appellant opposed federal jurisdiction by way of a motion to dismiss for lack of diversity claiming that both he and the appellee were Virginia citizens. After a hearing on the motion, the district court determined that the appellant was a citizen of Florida and that diversity between the parties did in fact exist. The court noted in that connection that Graff, at the time this action was instituted, was not registered to vote in Virginia, did not hold a Virginia driver's license, had not paid Virginia income taxes, was licensed to practice law in Florida, and used a Florida address when filing his federal income tax return.
 
 
 3
 The case then proceeded to trial by jury where a verdict was rendered in favor of the appellee in the amount of $5,200 in compensatory damages and $4,500 in punitive damages. Appellant then moved to dismiss, set aside, or, in the alternative, offset the jury verdict. These motions were denied and this timely appeal ensued. For the reasons set forth below, we affirm.
 
 I.
 
 4
 The first issue to be decided is that of jurisdiction. The appellant here argues that it was error for the district court to find federal jurisdiction in this case pursuant to 28 U.S.C. Sec. 1332 as the parties were not diverse. We cannot agree.
 
 
 5
 To establish Section 1332 jurisdiction, a moving party must affirmatively allege, as did the plaintiff in this case, the essential elements of diversity on the face of his complaint. Mann v. City of Tucson, Dept. of Police, 782 F.2d 790, 794 (9th Cir.1986). If, by way of answer, a party raises a legitimate question as to the existence of such diversity, a hearing on the matter by the district court is proper. See, e.g., Seaboard Finance Co. v. Davis, 276 F.Supp. 507 (N.D.Ill.1967).
 
 
 6
 Under 28 U.S.C. Sec. 1332(a)(1), citizenship is the equivalent of domicile and domicile is evaluated in terms of objective facts. Freeman v. Northwest Acceptance Corp., 754 F.2d 553 (5th Cir.1985). Statements of intent, when in conflict with such objective facts, are entitled to little weight. Id. at 556. Here, the objective facts evaluated by the district court made it evident that for purposes of federal diversity jurisdiction, the appellant had not established domicile in Virginia at the time this action was instituted. The district court properly applied the test of objectivity to all the evidence in the case and found diversity to exist. It accordingly dismissed the objection. We find no error in that decision.
 
 II.
 
 7
 We now turn to the incidents the appellant contends require a new trial. Appellant first takes exception to the district court's jury instruction with regard to compensatory damages for the uncut timber. The court instructed the jury as follows:
 
 
 8
 If you should find for the plaintiff and find it is entitled to compensatory damages, then the Court instructs you that that measure of compensatory damages is the fair market value of the timber as it stood, called its stumpage value, as of April 2, 1984. This value may be arrived at by determining the number of thousands of feet of timber at the then value per thousand of the uncut timber. And in addition, the plaintiff is entitled to recover the reasonable costs already expended of preparing for cutting, which would be attributable to the timber which it was not permitted to continue cutting.
 
 
 9
 We find such instructions to be in conformity with the law of Virginia. In Virginia, the sale of timber is regulated by the provisions of the Uniform Commercial Code as adopted by the Code of Virginia. See Sections 8.2-107, et seq. Damages for breach of a contract for the sale of goods such as lumber are determined by applying the provisions of Sections 8.2-712 and 8.2-713 and when calculated should reflect an injured party's entitlement to the benefit of his bargain.[1] The instruction given by the district court outlines the essential elements of such a recovery.
 
 
 10
 We note that the appellant argues that the correct measure of damages here should be the difference between the market value of the uncut timber at the time and place of conversion and the amount agreed to be paid for such timber. See Straley v. Fisher, 176 Va. 163, 10 S.E.2d 551 (1940). Were the contract for sale to have been negotiated between the appellant and the appellee, such a formula would have been correct. Here, however, the contract for sale was bargained for between the appellee and a third party not party to this action. Appellant's only relation to the contract was his holding of land subject to a timbering provision in the contract. To require now that the damages be reduced by the amount owed on such contract would in effect force the appellee to pay twice for the logging rights. This, of course, would be an inequitable result. The stumpage value of the remaining timber is an accurate measure of damages. The instruction given by the court clearly reflects this, and the appellant's assignment of error here must fail.
 
 III.
 
 11
 The appellant next takes exception to submission of the issue of punitive damages to the jury. The instruction on this matter read as follows:
 
 
 12
 If, from the evidence and the other instructions of the Court, you find your verdict for the Plaintiff, in addition to compensatory damages, if you believe from a preponderance of the evidence that the defendant acted wantonly, oppressively or with such recklessness as evinced a conscious disregard of the rights of others, or with such malice as implied a spirit of mischief or criminal indifference to civil obligations, you may award the plaintiff such additional sums as punitive damages as in your opinion are called for by the circumstances of the case.
 
 
 13
 In Virginia punitive damages are "allowable only when there is proof of actual or express malice which can be shown by, among other things, 'a conscious disregard of the rights of another,' " Strickler v. Neff Trailer Sales, 542 F.2d 890, 892 (4th Cir.), cert. denied, 429 U.S. 1024 (1976) (citations omitted). Here there is ample evidence of malice on the part of Graff to support the award of punitive damages. Accordingly, such issue was properly put before the jury, as trier of fact.
 
 
 14
 Because the verdict of the jury is well supported by the facts and conforms with the law of Virginia, the judgment of the district court is hereby
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The Virginia Uniform Commercial Code provides as follows:
 Sec. 8.2-712. "Cover"; buyer's procurement of substitute goods.--
 (1) After a breach within the preceding section [Sec. 8.2-711] the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
 (2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Sec. 8.2-715), less expenses saved in consequence of the seller's breach.
 (3) Failure of the buyer to effect cover within this section does not bar him from any other remedy. (1964, c. 219).
 Sec. 8.2-713. Buyer's damages for nondelivery or repudiation.--
 (1) Subject to the provisions of the title with respect to proof of market price (Sec. 8.2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this title (Sec. 8.2-715), but less expenses saved in consequence of the seller's breach.
 (2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival. (1964, c. 219.)