**MERCURY FINANCE CORPORATION OF ALABAMA, an Alabama Corporation, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY OF ILLINOIS, an Illinois Corporation; Aetna Casualty and Surety Company, a Connecticut Corporation; and Federal Insurance Company, an Indiana Corporation, Defendants.**

Civ. No. 94–D–1617–N.

United States District Court, M.D. Alabama, Northern Division.

Aug. 22, 1995.

Dennis R. Bailey, Robert A. Huffaker, Thomas H. Keene, Montgomery, AL, for plaintiff.

Cooper C. Thurber, Caroline L. McCarthy, William E. Shreve, Jr., Mobile, AL, for defendant AETNA.

Bibb A. Allen, Deborah Alley Smith, Susan S. Hayes, Birmingham, AL, for defendant Federal Insurance.

### *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is plaintiff Mercury Finance Corporation of Alabama's motion to remand filed March 24, 1995, the numerous replies and surreplies thereto. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the plaintiff's motion is due to be denied.

## PROCEDURAL HISTORY AND FINDINGS OF FACT

On November 16, 1994, the plaintiff filed a declaratory judgment action in the Circuit Court of Barbour County, Alabama. Thereafter, the defendants timely removed this lawsuit to the United States District Court for the Middle District of Alabama. The defendants predicate removal on diversity-of-citizenship jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.[1]

In its motion to remand, the plaintiff asserts that complete diversity does not exist between it and the defendants, and, thus, the court cannot properly exercise subject matter jurisdiction over this lawsuit. While it is undisputed that the plaintiff is incorporated in Alabama, the parties hotly debate the state in which the plaintiff has its principal place of business. The plaintiff insists that its principal place of business is in Illinois, and the defendants contend that Alabama should be considered the principal place of business.

The following chart outlines the state where each party is incorporated and maintains its principal place of business:

| DEFENDANTS | Principal Place of Business | State of Incorporation |
| --- | --- | --- |
| Aetna Casualty & Surety Co. of Illinois | Illinois | Illinois |
| Aetna Casualty & Surety Co. | Connecticut | Connecticut |
| Aetna Life & Casualty Co. | Connecticut | Connecticut |
| Federal Insurance Co. | Indiana | Indiana |
| PLAINTIFF | | |
| Mercury Finance Corporation | ????? | Alabama |

■ In determining the plaintiff's principal place of business, the court deems the following facts controlling:

1) The plaintiff is a finance company which purchases retail installment contracts, primarily from automobile dealers located in Alabama. The plaintiff also extends personal loans to Alabama borrowers and finances the purchase of certain credit-related insurance coverage. James Doyle's ("Doyle") Dep. at ¶¶ 13, 14.

2) The plaintiff is a wholly-owned subsidiary of Mercury Finance Company, a Delaware Corporation that maintains its principal place of business in Illinois. Mercury Finance Company owns twenty-five subsidiaries including the plaintiff, each of which is separately incorporated and conducts similar operations in different states. Mark Dapier's ("Dapier") Aff. at ¶ 2.[2]

3) The officers and directors of Mercury Finance Company, with one exception, live in Illinois. *Id.* at ¶ 8.

4) Mercury Finance Company, together with its subsidiaries, has approximately 1,300 employees. The plaintiff employs thirty-one workers, and all its salaried employees live in Alabama. *Id.* at ¶ 9; Doyle's Dep. at ¶¶ 33, 100.

5) The plaintiff maintains four branch offices in Alabama, located in Birmingham, Mobile, Enterprise and Dothan. Dapier's Aff. at ¶ 9.

6) The plaintiff leases all its office space and does not own any real estate in Ala-

---

**1.** Section 1441 states in part that "... any civil action brought in a State court of which district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending...." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), a district court has original jurisdiction over all cases where citizens of different states are involved and the amount in controversy exceeds $50,000, exclusive of interest and costs.

**2.** Dapier is an attorney licensed to practice law in Illinois and serves as general counsel for Mercury Finance Company and its wholly-owned subsidiaries. Doyle serves as an officer and director of Mercury Finance Company and several of its subsidiaries, including the plaintiff.

bama. *Id.* at ¶ 9. The plaintiff's personal effects in Alabama consist of approximately $30,000 in office furniture and equipment. Pl.'s Reply Mem. Supp. of Remand at 17.

7) The annual reports submitted by the plaintiff to the Alabama State Banking Department identify Northbrook, Illinois as the plaintiff's home office. Dapier's Aff. at ¶ 10.

8) Payroll and administrative services for the plaintiff are performed in Illinois. Mercury Finance Company also provides benefit plans for the plaintiff's employees. The plaintiff compensates Mercury Finance Company for services performed and expenses incurred on its behalf. *Id.* at ¶ 11. The plaintiff performs its own bookkeeping tasks.

9) The plaintiff's corporate policy is established in the Illinois office, along with its business forms and policy and procedure manuals. Moreover, "major business decisions" affecting the operation of the plaintiff are made at the Illinois office. *Id.* at ¶ 12.

10) The financial reporting and major accounting functions are performed in the Illinois office. Also, the plaintiff's federal income tax returns and state income tax returns are prepared at the Illinois office. The Alabama state tax returns, of course, are filed in Alabama. *Id.* at ¶ 13.

11) The plaintiff submits its own Alabama franchise and financial institution excise tax returns, as well as Alabama personal property tax returns. All of these tax returns are prepared in and paid from the Illinois office. The tax returns list the plaintiff's address as Northbrook, Illinois. Doyle's Dep. at 117–118.

12) The plaintiff's branch manager's job description is prepared in the Illinois office. *Id.* at 116. The branch manager cannot unilaterally fire anyone without consent of the director in Illinois and is vested with the broad power of executing the plaintiff's policies. Pl.'s Reply Mem.

Supp. of Mot. Remand at 21; Doyle's Dep. at 44.

13) The plaintiff's annual license renewal applications are prepared in and submitted from the Illinois office. *Id.* at 124–125.

14) All of the plaintiff's income is derived from operations in Alabama. *Id.* at 41.

15) The plaintiff maintains four depository bank accounts in Alabama. *Id.* at 50.

16) The plaintiff is a member of trade organizations within the state of Alabama. *Id.* at 56–7.

17) The branch managers of the plaintiff report directly to regional directors in Georgia and Florida. *Id.* at 104–105.

## STANDARD OF REVIEW

It is well-settled that the defendants, as the parties removing an action to federal court, have the burden of establishing federal jurisdiction. *Sullivan v. First Affiliated Secs.*, 813 F.2d 1368 (9th Cir.1987), *cert. denied*, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand. *See Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Butler v. Polk*, 592 F.2d 1293 (5th Cir.1979); *Paxton v. Weaver*, 553 F.2d 936 (5th Cir.1977).

## DISCUSSION

The sole dispute is whether for diversity jurisdiction purposes, the plaintiff maintains its principal place of business in Alabama or Illinois. 28 U.S.C. § 1332 sets forth the diversity requirements and provides, in pertinent part, that "[a] corporation shall be deemed a citizen of any state by which it has been incorporated *and* of the state where it has its principal place of business." [3] 28 U.S.C. § 1332(c)(1). Under the statute, a corporation has dual citizenship and is deemed a citizen of *every* state where incorporated and also of the *one* state in which it

---

**3.** The diversity-of-citizenship statute, as originally written, deemed a corporation a citizen only of the state(s) of its incorporation. In 1958, § 1332 was amended to provide dual citizenship for corporations, the primary purpose being to limit a corporation's access to federal court. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 558 (5th Cir.1985).

has its principal place of business. *Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431, 433 (5th Cir.1979); *J.A. Olson Co. v. City of Winona, Miss.,* 818 F.2d 401 (5th Cir.1987).

Whether the plaintiff maintains its principal place of business in Alabama or Illinois is dispositive of the forum in which this litigation will proceed: If the plaintiff maintains its principal place of business in Illinois, as it contends, then complete diversity is destroyed because defendant Aetna Casualty & Surety Co. of Illinois also is a citizen of this state. If the defendants are correct in their assertion that Alabama is the appropriate state of the principal place of business, then the requisite diversity exists and this action is properly in federal court.

The Eleventh Circuit has adopted the "total activities" test for determining a corporation's principal place of business. *See Anniston Soil Pipe Co. v. Central Foundry Co.,* 216 F.Supp. 473 (N.D.Ala.1963), *aff'd* 329 F.2d 313 (5th Cir.1964)[4]; *J.A. Olson Co.,* 818 F.2d at 411. The "total activities" test involves a fact-sensitive inquiry and is a hybrid of two tests: the "nerve center" and "place of activities" tests. *Vareka Inv., N.V., v. American Inv. Properties, Inc.,* 724 F.2d 907, 909–10 (11th Cir.1984).

### A. *"Nerve Center" Test*

■ The "nerve center" test originated in *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862 (S.D.N.Y.1959) and provides that if a corporation is involved in dispersed and multi-state operations, the principal place of business is the state where the executive and administrative decisions take place. In *Scot,* the corporation had manufacturing facilities in three states and its executive offices were located in New York. The corporation argued that its principal place of business was in Connecticut where the majority of its manufacturing, development and production occurred.

The court disagreed and found that New York, the situs of the executive headquarters,

4. Decisions of the Former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of*

was the principal place of business. The court reasoned that

> [w]here a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective.

*Scot,* 170 F.Supp. at 865 (footnote omitted). The court emphasized that the "nerve center" test should be restricted to those corporations involved in varied activities in several different states, whereby the principal place of business would be hard to denote. *Id.* at 865.

### B. *"Place of Activities" Test*

■ The "place of activities" test focuses on the corporation's center of production or service activities. In other words, when a corporation has its executive offices in one state and its physical operation wholly or predominantly in another state, the principal place of business is the state where the physical operations are conducted.

This test was introduced in *Kelly v. United States Steel Corp.,* 284 F.2d 850 (3rd Cir. 1960). There, the corporation's largest production plant was located in Pennsylvania. The majority of its employees also resided in Pennsylvania, as well as all of the key officers. While the members of the board of directors met and lived in New York, the court found that the board had delegated its managerial or operational duties to a committee comprised of Pennsylvania residents.

Other activities undertaken in New York included the filing of tax returns, banking activities and management of government securities and pension plans. *Id.* at 853–54. The court held that the corporation's "business by way of activities is centered in Pennsylvania and ... it is the activities rather than the occasional meeting of policy-making Directors which indicate the principal place of business." *Id.*

*Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

### C. *Relationship Between the "Nerve Center" and "Place of Activities" Tests*

The Court of Appeals for the Fifth Circuit, which also employs the "total activities" concept, stated that a court should not rigidly apply one test or the other: "[T]he ultimate question is not which test to apply, but rather which consideration, on the basis of the totality of the facts, predominates." *Olson*, 818 F.2d at 406. In other words, the *Olson* court explained that

> neither the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather the tests simply stand for the general rules regarding the determination of a particular corporation's principal place of business: the principal place of business of a far-flung corporation will generally be its nerve center; the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former; and the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations. These rules, however, are applied on a case-by-case analysis, weighing the particular facts. The two tests are therefore not mutually exclusive but rather complimentary.

*Olson*, 818 F.2d at 409 (internal citations omitted) (internal footnote omitted).

The *Olson* court also listed additional factors to consider when determining where the "total activities" of a corporation occur: (1) the nature of the activity, i.e., whether "active or passive," "labor-intensive" or "management-demanding"; (2) the number of locations where the corporation operates; (3) the significance of the activity as it relates to the corporate purpose and the corporation as a whole; (4) the amount of contact the corporation has with the community; (5) the location of the corporation's nerve center; and (6) whether corporate decisions are confined to the nerve center or delegated to other locations. *Id.* at 411.

### D. *Analysis*

After giving due consideration to the plaintiff's various business activities, the court finds that the plaintiff's principal place of business is in Alabama, thus, rendering federal court an appropriate forum for resolution of the parties' legal dispute. The court further finds for the reasons set forth herein that the "place of activities" analysis is more significant in this action even though the Northbrook, Illinois office clearly serves as the "nerve center" for the plaintiff's management and financial activities. As indicated in *Olson*, the "nerve center" prong is less significant where, as here, the plaintiff's operating activities are limited to one state.

The plaintiff asserts that greater emphasis should be placed on the "nerve center" prong of the "total activities" test. To paraphrase, the plaintiff argues that its activities are far flung because it is part of a larger operation consisting of many separately-incorporated subsidiaries, all of which are engaged in similar businesses throughout the country and are controlled by a parent corporation. The plaintiff principally relies on *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313 (5th Cir.1980). The court, however, disagrees that *Toms* is dispositive in this case.

In *Toms*, the plaintiffs commenced suit in federal court seeking recovery from several corporations for injuries caused by poisoned meat purchased at a store in Georgia called Country Quality Meats, Inc. ("Country Quality"). The district court found that Country Quality's principal place of business was in Georgia and dismissed the action on grounds that complete diversity did not exist. The court of appeals reversed.

There, it was undisputed that for diversity purposes, the plaintiffs were citizens of Georgia. The only dispute was whether Country Quality maintained its principal place of business in Georgia or Texas. The business activities of Country Quality and the court's holding are succinctly stated in *Olson*, from which the court quotes:

> Country Quality, a Delaware corporation qualified to do business in Georgia, was one of sixty similar corporations created and managed by Brueggemeyer & Wolf (B

& W), a Texas corporation. Country Quality, like the other local corporations, was run by B & W, but paid local taxes, had a local bank account and had its own staff. B & W, however, exercised almost total control over Country Quality in that it was authorized to discharge employees, it reviewed all sales reports, time cards and payroll sheets and it selected the suppliers from which Country Quality could buy its products. We also noted that Country Quality was vested with so little managerial authority that its highest-ranking employee "wore an apron," that is, "was primarily engaged in meat cutting activities." *Id.* at 315 n. 4. Even though Country Quality had its only contact with the public in Georgia, we looked at the operation as whole. The scenario was similar to that of a "far flung" corporation with a concentrated nerve center and diffuse places of activity. Country Quality's operation represented only a single location of the many locations of the corporate activities; the nerve center, however, was in one location. We therefore held that the principal place of business was Texas, the "nerve center of the operation."

818 F.2d at 410.

The court finds that *Toms* does not establish a hard-and-fast rule that every time a parent corporation exerts control over similar but separately-incorporated subsidiaries, the court must look to the "nerve center" to determine the principal place of business. Based upon the particular facts presented here, the court finds *Toms* distinguishable. Particularly, unlike *Toms,* the control over the day-to-day management operations is largely delegated to the plaintiff and transpires in Alabama. *See Anniston,* 216 F.Supp. at 475 (finding that while the corporate policy emanated from New York, Alabama was the site of independent administrative functions and, thus, the corporation's principal place of business).

Specifically, the majority of the plaintiff's business decisions are made by branch managers who live in Alabama. The manager at each branch evaluates loan applications and the creditworthiness of potential customers and also makes the final decision regarding purchases of installment contracts and approval of loans. While all job descriptions, policies and procedures initially are formed in the Illinois office, the plaintiff's branch managers are responsible for their implementation.

The record further indicates that the branch managers have substantial control over the hiring and training of all employees and the administration of the various phases of business development. The branch managers also sign checks, recommend salary increases, supervise collections and oversee the bookkeeping. In the words of *Toms,* the branch managers do not merely "wear aprons." Moreover, the plaintiff's branch managers report to regional directors in Georgia and Florida, not in Illinois. The regional directors, in turn, report to one of the plaintiff's vice presidents, who resides in Georgia.

In addition, the plaintiff's business operations require significant contacts with the public and create a visible presence in Alabama. *See Olson,* 818 F.2d at 411 n. 14 (acknowledging the importance of the public contact factor even though it was not "ultimately" dispositive in *Toms* ); *see also Messinger v. United Canso Oil & Gas Ltd.,* 80 F.R.D. 730, 735 (D.Conn.1978) (stating that "if the purpose of diversity jurisdiction is to avoid the effects of prejudice against outsiders, then the principal place of business of a corporation should be the place where it has its greatest contacts with the public"). The plaintiff also derives its sole source of income from its financing activities in Alabama, an *Olson* factor that leans toward finding Alabama as the principal place of business.

The court acknowledges, but does not deem determinative, the fact that financial and corporate policy activities occur in Illinois. For example, the parent corporation files the plaintiff's federal tax returns in Illinois, maintains the corporate records, establishes corporate policy and provides employee benefit plans. Although the activities in Illinois are clearly important, the court feels that they do not outweigh the greater significance of the activities conducted in Alabama.

Given all these factors, the court finds that for purposes of federal diversity jurisdiction,

the plaintiff's principal place of business is in Alabama. In so finding, complete diversity exists between the opposing sides, and the court properly exercises subject matter jurisdiction over this action. *See* 28 U.S.C. §§ 1441(b) and 1332. Accordingly, the plaintiff's motion to remand is due to be denied.

## ORDER

For the foregoing reasons, it is CONSIDERED and ORDERED that the plaintiff's motion to remand be and the same is hereby DENIED.