**Wayne BURNSIDE, Plaintiff,**

**v.**

**SANDERS ASSOCIATES, INC. et al., Defendants.**

**Civ. A. No. CA–3–78–1298–D.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 11, 1980.

Harold B. Berman, Dallas, Tex., for plaintiff.

John A. Mackintosh, Jr., Ralph E. Hartman, Dallas, Tex., for defendants.

## ORDER

ROBERT M. HILL, District Judge.

Came on for consideration the motion of defendant Harris Data Communications, Inc., ("HDC") to dismiss this suit for lack of subject matter jurisdiction. The court has considered the motion, the testimony and evidence adduced at two hearings on the motion, the discovery on file, and the briefs and arguments of counsel and is of the opinion that the motion should be granted.

### I. *Background*

On September 12, 1979, plaintiff filed his Second Amended Complaint and Jury Demand. This complaint added HDC as a party defendant, alleging it to be "a corporation incorporated under the laws of a state other than the State of Texas, having its principal place of business in a state other than the State of Texas." HDC responded to this complaint by filing a motion to dismiss, contending that HDC's principal place of business is in Texas, the state of which plaintiff is a citizen. This state of affairs was said to destroy diversity jurisdiction.

Plaintiff replied by asserting that HDC's principal place of business is not in fact in Texas or, in the alternative, that the court should exercise pendent jurisdiction over the nondiverse party.

### II. *Pendent Jurisdiction*

Plaintiff argues that since there is diversity between him and two of the defendants, Sanders Associates, Inc., ("Sanders") and Harris Corporation ("Harris"), the court can exercise pendent jurisdiction over the claim against HDC.

In support of this argument for pendent jurisdiction, plaintiff cites *Campbell v. Triangle Corp.*, 336 F.Supp. 1002 (E.D.Pa. 1972), in which Judge Lord allowed the exercise of jurisdiction in a case similar to the one at bar. After the Third Circuit's decision in *Seyler v. Steuben Motor, Inc.*, 462 F.2d 181 (3d Cir. 1972), however, Judge Lord reconsidered his decision and dismissed the nondiverse claims. *Campbell*, 56 F.R.D. 480 (E.D.Pa.1972). The earlier decision was based on a case which "has not found acceptance outside the Third Circuit, and even within the circuit has not been expanded beyond its peculiar facts." 3A Moore's Federal Practice ¶ 20.07(5.–2) at 20–90 (1979). Professor Wright characterizes the Campbell theory of pendent parties as "assault on the rule of complete diversity [which] generally has been rebuffed and is not likely to be widely followed." 13 Wright, Miller, and Cooper, *Federal Practice and Procedure: Civil*, § 3567 at 458–59 (1975). *See also id.* § 3605 at 620. For this reason, the court declines to abandon the requirement of complete diversity and declare HDC a pendent party; jurisdiction cannot be supported under this theory.

### III. *Alter Ego Citizenship*

Plaintiff next argues that HDC, which is a wholly-owned subsidiary of Harris, must be considered to have the same citizenship as its parent Harris for purposes of diversity jurisdiction. This contention must also fail.

It is well established that a "subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." 1 Moore's Federal Practice, ¶ 0.77(1.–2) at 717.10 (1979). There is an exception to this rule: the subsidiary takes the citizenship of the parent when it is not really a "separate entity." Whether a subsidiary is a separate entity is a question of fact. In making this determination courts consider such matters as the degree of control exercised by the parent, the relationship between parent and subsidiary activities, the membership of the Board of

Directors, and the maintenance of separate corporate books. 13 Wright, Miller, and Cooper, *supra*, § 3625 at 802.

The legal analysis to be applied in these cases comes from a Supreme Court case concerning a related issue—personal jurisdiction. In *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), the Court refused to find that a parent corporation did business in the forum state simply because its subsidiary did business there. In considering the issue the Court stated:

> Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated .... The existence of the (subsidiary) as a distinct corporate entity is, however, in all respects observed .... The corporate separation, though perhaps merely formal, was real. It was not pure fiction.

*Id.* at 335, 337, 45 S.Ct. at 250, 251.

The First Circuit recently applied this analysis to determine whether a subsidiary's corporate identity could be ignored for the purpose of considering diversity of citizenship. In *de Walker v. Pueblo International, Inc.*, 569 F.2d 1169 (1st Cir. 1978), the plaintiff showed that Pueblo, the parent, regarded Hills, the subsidiary, as a "division." Further, the parent routinely included the subsidiary's figures in its calculations of overall profits, losses, expenses, numbers of employees, and real estate holding. The subsidiary's affairs were routinely scrutinized by the parent's Board of Directors, and the parent participated in such major decisions as the hiring and replacement of the subsidiary's president. Nevertheless, the court refused to disregard the subsidiary's separate citizenship for diversity purposes:

> Hills appears to have remained a distinct entity in all respects with both corpora-

> tions keeping separate books for accounting and tax purposes. Pueblo's presentation of consolidated profit, loss, and other calculations to its shareholders in some reports does not detract from the otherwise complete fiscal and operational segregation of the two corporations.

*Id.* at 1173.

Likewise, in *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140 (3d Cir. 1972), the court refused to merge parent and sub for diversity purposes since they kept separate books and all transactions between the two were represented by appropriate book entries. The court stated that:

> the case law strongly shows that "where the corporate separation between a parent and subsidiary, 'though perhaps merely formal,' is 'real' and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise."

*Id.* at 1142. *Carnera v. Lancaster Chemical Corp.*, 387 F.2d 946 (3d Cir. 1967), *cert. denied*, 390 U.S. 1027, 88 S.Ct. 1418, 20 L.Ed.2d 285 (1968); *Coles v. Humble Oil & Refining Co.*, 348 F.Supp. 1240 (S.D.Tex. 1972); *Horwat v. Paulsen-Webber Cordage Corp.*, 336 F.Supp. 1020 (W.D.Pa.1971); *Brown v. Kingsport Publishing Corp.*, 321 F.Supp. 1352 (E.D.Tenn.1971); *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405 (N.D.Cal.1970).

The Fifth Circuit has considered corporate-subsidiary relationships in considering whether a company was "doing business" in the forum for venue purposes. Under the facts of *Frazier v. Alabama Motor Club*, 349 F.2d 456 (5th Cir. 1965), the court found that corporate identity could be ignored. There it was shown that "the corporate and business activities of the defendants ... are managed, directed, and completely controlled by (the parent)." *Id.* at 460. It was found that the local managers were vested with limited authority and discharged none of the functions customarily assigned to corporate officers.

In the instant case, as in *Coles, supra,* the plaintiff has not sufficiently proven an agency relationship like that in *Frazier.* Although Harris treats HDC as a "division" for corporate reporting purposes, HDC is an independent entity with significant autonomy. Elliott James, HDC's chief operating officer, testified that HDC itself draws up plans for corporate objectives, accepts contracts for HDC, develops sales and promotion plans, sets HDC's budget, selects the advertising agency, purchases inventory, sets all employee salaries, and develops new products. The relationship of Harris with HDC is to give advice and guidance on the policy level and to help with equity financing. Harris has little, if anything, to do with the day-to-day operations of HDC.

In summary, the relationship between Harris and HDC is not close enough to justify the imputation to HDC of Harris' principal place of business for the purpose of determining HDC's citizenship.

## IV. *HDC's Principal Place of Business*

The determination of a corporation's principal place of business is a question of fact, and is one that can prove difficult for corporations with complex structures. Case law was initially divided as to the weight to be given the basic categories of corporate activity in making this determination. Decisions followed either a "nerve center" test developed by the Southern District of New York, which places predominant emphasis on the location of executive and administrative functions, or a "place of operations" test used by the Third Circuit. The Fifth Circuit combines these two approaches in what it calls a "total activity" test as the legal standard for determining a corporation's principal place of business. *Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431 (5th Cir. 1979). This test calls for a "thorough review of the total corporate activity." *Id.* at 434. Thus the court must examine all of HDC's operations in order to determine its citizenship.

Although its functions are spread throughout the country, Texas is HDC's principal place of business. All of the HDC activities listed in section III above are carried out in Texas. In addition, the corporate offices (owned by HDC) are located in Texas, and the officers who actually perform HDC functions (as opposed to the official list of "officers" designated by Harris) all have their offices in Texas. Of HDC's 2,000 employees, approximately 800 are in Dallas, Texas. Of the remainder, 700 are scattered throughout the country in HDC field offices.[1] There are approximately 250 employees in a Florida facility which manufactures small computers and 300 employees in a New Hampshire manufacturing facility. The field offices report to Dallas, as does the New Hampshire manufacturing plant. The Florida facility is autonomous, although its financial reporting is included in HDC's financial reports. HDC's real estate is also predominantly in Texas. The Dallas operation owns 248,000 square feet and leases 65,000 square feet (313,000 total). The Florida facility owns 120,000 square feet and leases 170,000 square feet (290,000 total), and the New Hampshire facility owns only 78,000 square feet. Plaintiff's Exhibit 10 (S.E.C. form 10–K, 1978). In short, although the New Hampshire and Florida activity is significant, it is not sufficient to convince the court that HDC's principal place of business is not in Texas.[2]

The court concludes that HDC is a citizen of Texas. Since plaintiff Burnside is also a Texas citizen, this court has no jurisdiction based on 28 U.S.C. § 1332, diversity of citizenship. This case therefore should be dismissed in its entirety.

It is so ORDERED.

---

1. HDC has 38 sales offices and 116 service centers throughout the United States.

2. The burden of proving all jurisdictional facts rests upon the plaintiff asserting jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).