**AMARILLO OIL COMPANY and Pioneer Gas Products Company, Plaintiffs,**

v.

**MAPCO, INC., Defendant.**

Civ. A. No. CA–2–82–88.

United States District Court,
N.D. Texas,
Amarillo Division.

Oct. 6, 1983.

John L. Estes, Michael H. Collins, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for plaintiffs.

R.K. Pezold, Frederic Dorwart, Holliman, Langholz, Runnells & Dorwart, Tulsa, Okl., for defendant.

MEMORANDUM AND ORDER

MARY LOU ROBINSON, District Judge.

Plaintiffs have filed this suit seeking a declaration that they are entitled to extract

certain liquid hydrocarbons from natural gas delivered to them pursuant to the so-called 1928 B Contract. See *Mapco, Inc. v. Pioneer Corp.*, 447 F.Supp. 143 (N.D.Tex. 1978), *aff'd*, 615 F.2d 297 (5th Cir.1980), for the background to this controversy. Mapco has moved to dismiss, alleging that Mapco Westpan, Inc., a wholly owned subsidiary of Mapco, is the current owner of rights to the liquid hydrocarbons in dispute and, therefore, is a party whose joinder is needed for just adjudication. Since the joinder of Mapco Westpan would defeat diversity jurisdiction, Mapco argues, this case should be dismissed under Fed.R.Civ.P. 19(b). Plaintiffs argue that joinder of Mapco Westpan would not destroy diversity jurisdiction because Mapco Westpan "is a fiction and a sham corporation totally dominated and controlled by its parent Mapco, and the citizenship of admittedly diverse Mapco should be imputed to Mapco Westpan."

By teleconference on July 18, 1983, counsel for both parties informed the Court that the material facts are not in dispute and that no evidentiary hearing or oral argument is necessary for deciding the Motion to Dismiss.

### The Doctrine of Imputed Citizenship

All the parties to this suit have agreed that Judge Hill's statement of the doctrine of imputed citizenship is "good law":

> It is well established that a "subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." ... There is an exception to this rule: the subsidiary takes the citizenship of the parent when it is not really a "separate entity." Whether a subsidiary is a separate entity is a question of fact. In making this determination courts consider such matters as the degree of control exercised by the parent, the relationship between parent and subsidiary activities, the membership of the Board of Directors, and the maintenance of separate corporate books.

*Burnside v. Sanders Associates, Inc.*, 507 F.Supp. 165, 166–67 (N.D.Tex.1980), *aff'd*, 643 F.2d 389 (5th Cir.1981) (citations omitted). Despite general agreement that such a doctrine exists, the federal courts have consistently refused to impute the citizenship of a parent to its subsidiary. *See, e.g., de Walker v. Pueblo International, Inc.*, 569 F.2d 1169 (1st Cir.1978); *Quaker State Dyeing & Finishing Co.*, 461 F.2d 1140 (3d Cir. 1972); *Burnside, supra.* As the Third Circuit commented:

> [T]he case law strongly shows that "where the corporate separation between a parent and subsidiary, 'though perhaps merely formal,' is 'real' and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise."

*Quaker State* at 1142.

### Piercing the Corporate Veil in Texas

"The" corporate veil has become a misnomer in modern times. Since the end accomplished by piercing a corporate veil has such an impact on whether to pierce, and because the courts have recognized that a corporate veil may be pierced for one purpose, but not another, today's corporation is multiveiled.

The preliminary determination in tort and contract cases encompasses the full range of factors delineated by Justice Douglas and C.M. Shanks in *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929): (1) whether distinct and adequately capitalized financial units are incorporated and maintained; (2) whether daily operations of the two corporations are separate; (3) whether formal barriers between the management of the two entities are erected, with each functioning in its own best interests; and (4) whether those whom the corporations come in contact with are apprised of their separate identity. *See Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 339–40 (Tex.1968). "Other factors deemed important by the commentators and Texas courts are: (1) common stock ownership; (2) the

method and degree of financing of the subsidiary by the parent; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; (6) extent to which contracts between parent and subsidiary favor one over the other; and (7) connection of parent's employee, officer or director to subsidiary's tort or contract giving rise to suit." *Miles v. American Tel. & Tel.*, 703 F.2d 193, 195–96 (5th Cir.1983).

■ No single factor is determinative: not complete stock ownership, *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir.1978) (Texas law), not the filing of joint tax returns, *Matter of Chrome Plate, Inc.*, 614 F.2d 990, 996 (5th Cir.1980) (Texas law), not interlocking directors and officers, *Bell Oil & Gas*, 431 S.W.2d at 339, and not loans between the parent and the subsidiary, *Peterson v. Chicago, R.I. & P. Ry.*, 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841 (1907). Instead, "each case involving disregard of the corporate entity must rest upon its own special facts." *Rosenthal v. Leaseway of Texas*, 544 S.W.2d 180, 182 (Tex.Civ.App.— Tyler 1976, no writ). Fraud or illegality is not necessary for piercing the corporate veil. *Edwards Co. v. Monogram Indus.*, 700 F.2d 994 (5th Cir.1983), *opinion on denial of rehearing*, 713 F.2d 139, 141 (5th Cir.1983), *rehearing en banc granted*, 715 F.2d 157 (5th Cir.1983).

Only if, upon consideration of all these factors, a court finds "[v]irtually total disregard by the parent of the subsidiary" may it disregard the corporate entity. *Edwards*, 700 F.2d at 1004.

### Piercing Outside Tort & Contract

Once the purpose for disregarding the corporate entity is no longer the imposition of liability in a traditional tort or contract cause of action, the factors to be considered in determining the separate existence of a subsidiary become severely limited. With regard to federal income tax liability, for example, the Supreme Court has said:

> The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.

*Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 438–99, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943). *See United States v. Creel*, 711 F.2d 575 (5th Cir.1983).

■ Similarly, the factors to be considered in determining whether to disregard the corporate entity and impute the citizenship of the parent to the subsidiary are severely limited because the creation of diversity jurisdiction is one of the least compelling reasons for disregarding the corporate entity. In the personal jurisdiction context, the Supreme Court has refused to disregard the separate corporate existence of a subsidiary under the following facts:

> Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated.... The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation ... was doubtless adopted solely to secure to the defendant some advantage under the local laws.

*Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925). When it comes to jurisdiction, existence on paper and separate books of accounting may be enough, or are they? In *Cannon* the Supreme Court held that the

parent wasn't doing business in a state simply because its subsidiary did business there, but in *Frazier v. Alabama Motor Club,* 349 F.2d 456 (5th Cir.1965), the Fifth Circuit held that for purposes of venue, the separate corporate existence of totally dominated subsidiaries could be disregarded and a finding reached that the subsidiaries did business in the parent's state, despite the observance of superficial formalities by the parent and the subsidiaries. The *Burnside* court, by holding that the plaintiff in that case had not "sufficiently proven an agency relationship like that in *Frazier*," 507 F.Supp. at 168, implicitly suggested that such a proof might suffice for imputing citizenship.

This Court, however, finds *Frazier* sufficiently distinguishable from *Cannon* to mandate following the latter. As Defendant points out, this case does not involve the issue of venue or doing business within the meaning of the venue statute. The issue here is whether to disregard Mapco Westpan's separate corporate existence and impute Mapco's citizenship to Mapco Westpan for purposes of diversity jurisdiction. *Cannon* remains the guide to the interaction of jurisdiction and corporate alter ego theory. Although Justice Brandeis arguably intended his listed factors to be illustrative instead of definitive, the continued vitality of *Cannon* is reflected in the cases. *See, e.g., Burnside,* 507 F.Supp. at 167.

### Of Mapco (Westpan)

Mapco is a large company headquartered in Tulsa, Oklahoma, which controls over 185 subsidiaries, the books and records of most of which are maintained at Mapco's Tulsa headquarters. One phase of Mapco's business involves extracting liquid hydrocarbons from natural gas produced in the West Panhandle Field of Texas.

In December, 1979, Harley Mangels, then Tax Counsel and Assistant Secretary of Mapco and in charge of Mapco's tax department, conceived the idea of placing the Texas assets of Mapco in a wholly owned subsidiary to escape state income taxes. Mangels checked to see whether changes of substance in the actual operations of the Texas assets would be required because of their incorporation. No such problems appeared and Mapco Westpan was incorporated eight days after Mangels' recommendation to his superiors at Mapco. Two days after Mapco Westpan's incorporation, Mapco conveyed all of its right, title and interest in its gas processing plant near Fritch, Texas, and in the hydrocarbon constituents contained in the natural gas in place in and under gas leasehold and mineral estates in the Counties of Potter, Moore, Hutchinson, Hartley, Oldham, and Carson, to Mapco Westpan. Plaintiffs have not challenged the validity of these conveyances.

The record leaves little doubt that Mapco has thoroughly dominated and controlled Mapco Westpan. Mapco employees in Tulsa handle Mapco Westpan's tax, legal and accounting work. Mapco arranges Mapco Westpan's insurance and has the final say over Mapco Westpan's budget. Mapco Westpan must purchase "big ticket" items through Mapco's purchasing department and must receive Mapco's approval before entering into contracts in excess of a fixed monetary level. The forms used at Mapco Westpan are ordered through the Mapco forms control department in Tulsa and, in several cases, are identical to forms used elsewhere by Mapco. Mapco Westpan sells virtually all of its production to other Mapco subsidiaries. In fact, Mapco Westpan has never even investigated selling to another buyer.

Every dollar taken in by Mapco Westpan is deposited in a bank account in Tulsa which bears the name of Mapco. All of the earnings of Mapco Westpan are declared as dividends to Mapco. Mapco Westpan retains no surplus from its own earnings. The officers and directors of Mapco and Mapco Westpan were completely interlocking from Mapco Westpan's inception through the filing of this suit.

Mapco Westpan's Bivins plant is listed in the Dumas, Texas, telephone directory under "Mapco, Incorporated" and no effort was made to change this listing even though it was known to the Bivins plant

superintendent. The benefit booklet given to Mapco Westpan employees is produced by Mapco and the benefit plans themselves are administered by Mapco. The booklet unambiguously states that the "Employer, Administrator and Agent for Legal Service is MAPCO Inc., 1800 South Baltimore Avenue, Tulsa, Oklahoma 74119."

The events following the filing of this suit, though not relevant to determining Mapco Westpan's separate corporate existence as of the date of filing, are nonetheless illustrative. A month after this suit was filed, the Bivins plant superintendent issued a memo instructing employees to use "the actual name, Mapco *Westpan, Inc.*" (emphasis in original). Harry Grubbs, deposed as a corporate witness for Mapco Westpan, testified that he was not employed by Mapco, Inc., but his only form of business card had "Mapco, Inc." printed across the bottom. Plaintiffs' list of incidents of domination is even longer.

Were this an issue of disregarding Mapco Westpan's separate corporate existence for the purpose of imposing liability, there is little question that this Court would do so based on a broad consideration of the factors enumerated in *Bell Oil & Gas* and *Miles.* As discussed above, however, disregarding a subsidiary's separate corporate existence for purposes of jurisdiction implicates only the minimal standards of *Cannon:* existence on paper and separate books of accounting.

### *Mapco Westpan: A Paper Tiger*

There is no dispute that Mapco Westpan is properly incorporated under the laws of the State of Texas. Moreover, Mapco's witnesses repeatedly testified that Mapco Westpan maintains a separate set of books which relate only to the operations of Mapco Westpan. These books reflect all the financial transactions between Mapco and Mapco Westpan. The separate equipment, land, buildings and other assets of each corporation are reflected on their respective corporate books. While the Plaintiffs attack the fact that these books are kept by Mapco in Tulsa and are scattered throughout Mapco's accounting departments, the operative fact is that they exist. Centralized accounting services for a parent and its subsidiaries is a common feature on the modern corporate landscape.

Plaintiffs also attack Mapco Westpan's observance of corporate formalities because Mapco Westpan freely admits that several of the meetings recorded in its corporate minutes never actually took place. Mapco, it appears, schedules all of the annual meetings of its subsidiaries on the same day as Mapco's annual meeting. Mapco actually held an annual stockholders meeting. Afterwards the Board of Directors of Mapco would meet and Mapco's Chairman, without taking a vote, would say "We have re-elected the same officers of Mapco, Inc., and the same officers and directors of the subsidiaries of Mapco, Inc." The secretary would then prepare the minutes and have consents executed. There is nothing superficially defective in this procedure, Tex.Bus.Corp.Act, art. 9.10 (Vernon 1980), and nothing which prevents Mapco Westpan from meeting the minimal test of *Cannon.*

Other facts in the record support Mapco Westpan's separate existence. Many outside companies have invoiced Mapco Westpan for goods and services, several forms and plant schematics are labeled "Mapco Westpan," and employees of both Mapco and Mapco Westpan testified to Mapco Westpan's separate corporate existence.

### *Is Mapco Westpan Indispensable?*

The crux of this litigation is the ownership of certain liquid hydrocarbons contained in natural gas produced from the West Panhandle Field. Since Mapco has conveyed all of its interest in these hydrocarbons to Mapco Westpan, the latter is a party who should be joined under Fed.R. Civ.P. 19(a). *Schutten v. Shell Oil Co.,* 421 F.2d 869, 874 (5th Cir.1970); *Broussard v. Columbia Gulf Transmission Co.,* 398 F.2d 885, 889 (5th Cir.1968).

Mapco Westpan, however, is a citizen of the State of Texas and cannot be joined without divesting this Court of subject matter jurisdiction. The diversity statute, 28

U.S.C. § 1332, requires complete diversity between the parties in order for the federal courts to have jurisdiction. *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941).

This Court turns, then, to the analysis required under Fed.R.Civ.P. 19(b) to determine whether Mapco Westpan is indispensable: ·

> The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

All four factors militate in favor of dismissal in this case. Mapco Westpan would almost inevitably be prejudiced by a determination that Plaintiffs were entitled to liquid hydrocarbons owned by Mapco Westpan and no possible protective features in a judgment are apparent which would lessen or avoid the prejudice to Mapco Westpan from such a determination. Since Mapco claims that Mapco Westpan owns all the liquid hydrocarbons at issue, any judgment rendered absent Mapco Westpan would be inadequate because no relief could be accorded the parties. Finally, Plaintiffs have an adequate remedy upon dismissal: Texas state court. This case presents state law issues and the Texas courts have many times in the past determined ownership interests in natural gas. Mapco Westpan, Inc., is a Texas corporation which may be brought into Texas state court.

Since this Court cannot in equity and good conscience proceed without Mapco Westpan and because joinder of Mapco Westpan would deprive this Court of jurisdiction, this case should be dismissed.

### Conclusion

After due consideration of the papers and discovery documents on file in this cause, along with the arguments of counsel, the Court is of the opinion that Defendant Mapco Inc.'s Motion to Dismiss for failure to join an indispensable party should be and hereby is GRANTED. Civil Action No. CA–2–82–88 is DISMISSED.

It is so ORDERED.