Richard E. BEIGHTOL and Martin F. Traynor, Plaintiffs,

v.

CAPITOL BANKERS LIFE INS. CO. and North American Life Assurance Co., Defendants.

Civ. A. No. 89–C–1207.

United States District Court, E.D. Wisconsin.

Feb. 20, 1990.

Kenan J. Kersten, Kersten & McKinnon, Milwaukee, Wis., for plaintiffs.

Clay R. Williams, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., and Thomas C. Kayser, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for defendants.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### FACTS

On August 23, 1989, the plaintiffs commenced wrongful termination of employment and misrepresentation claims against the defendants in the Circuit Court for Milwaukee County, Wisconsin. On September 22, 1989, defendants filed a petition to remove plaintiffs' complaint to this court. Defendants claim that removal is proper pursuant to Title 28 U.S.C. § 1441(b) because neither of the defendants is a citizen of Wisconsin and this court has subject matter jurisdiction over plaintiffs' complaint. Defendants claim that jurisdiction exists pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $50,000 and the dispute is between citizens of different states.

On October 12, 1989, plaintiffs moved this court to remand their complaint and to award them the attorney's fees and costs they have expended on their remand motion. Plaintiffs claim that this court does not have subject matter jurisdiction over their complaint because there is not complete diversity of citizenship between the plaintiffs and defendants.

The plaintiffs are both citizens of Wisconsin (Complaint ¶ 1). The defendant North American Life Assurance Co. ("North American Life") is a foreign corporation based in Ontario, Canada. The defendant Capitol Bankers Life Insurance Co. ("Capitol Bankers") is a wholly-owned subsidiary of North American Life (Bradford Aff. ¶ 5). Capitol Bankers, however, was incorporated in Minnesota and does business in fifty (50) states (Beightol Aff. Exh. 1). The parties dispute Capitol Bankers' principal place of business.

Plaintiffs argue that Capitol Bankers' principal place of business is Wisconsin and therefore complete diversity of citizenship does not exist between the plaintiffs and all of the defendants. The defendants argue that Capitol Bankers is the "alter ego" of North American Life and therefore its principal place of business is Ontario, Canada. This court finds that there is not complete diversity between the plaintiffs and defendants because Capitol Bankers' principal place of business is Wisconsin. Thus, this court lacks subject matter jurisdiction to hear plaintiffs' complaint, and plaintiffs' motion to remand is granted. This court, however, finds that defendants' position on removal was justifiable and made in good

faith, and therefore plaintiffs' motion for attorney's fees and costs is denied.

## ANALYSIS

### I. SUBJECT MATTER JURISDICTION

The United States Supreme Court has repeatedly held that each defendant must be a citizen of a different state than each plaintiff in order for a federal court to have subject matter jurisdiction under the federal diversity statute, 28 U.S.C. § 1332. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). In addition, 28 U.S.C. § 1332(c) states:

> For the purposes of this section and section 1441 [the removal section] of this title, a corporation shall be deemed a citizen of any State in which it has been incorporated and of the State where it has its principal place of business.

Federal district courts disagree as to how § 1332(c) should be applied to foreign chartered corporations.[1] This court, however, does not have to consider how this section applies to North American Life because it finds that Capitol Bankers is a citizen of Wisconsin.

Pursuant to § 1332(c), a corporation that is incorporated in the United States is a citizen of the state in which it is incorporated and a citizen of the state in which it has its principal place of business. Thus, Capitol Bankers is a citizen of Minnesota (Beightol Aff. ¶ 5) and the state in which it has its principal place of business.

Federal courts have generally used three separate but overlapping tests to determine a corporation's principal place of business:

1) the "nerve center" test which searches for the state from which the corporation's activities are controlled and directed; 2) the "center of corporate activity" test which searches for the state where the corporation's day-to-day management is conducted; and 3) the "locus of the operations" test which searches for the state where the majority of the corporation's physical operations are located. *Topp v. Compair Inc.*, 814 F.2d 830, 834 (1st Cir.1987).

The Seventh Circuit has adopted the nerve center test and has stated, "[W]e look for the corporation's brain, and ordinarily find it where the corporation has its headquarters." *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986); *see also In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 620 (7th Cir.1981) *cert. denied* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *Celanese Corp. of America v. Vandalia Warehouse Corp.*, 424 F.2d 1176, 1178 (7th Cir.1970). The Seventh Circuit has considered the following factors to be important in determining the location of a corporation's nerve center:

1) the location of the general offices;

2) the residence of officers and department heads;

3) where management decisions are made;

4) where income tax returns are filed;

5) the location of the records and audits;

6) where credit card and collection matters are handled;

7) the location of the principal bank account;

8) the location of the board of director's meetings;

9) where all orders are received and filled; and

---

**1.** In *Grimandi v. Beech Aircraft Corp.*, the federal district court summarized the primary views on how 28 U.S.C. § 1332(c) should be applied to foreign corporations:

1. The traditional view that section 1332(c) is inapplicable to foreign chartered corporations, and thus a foreign corporation's principal place of business is irrelevant [*Eisenberg v. Commercial Union Assurance Co.*, 189 F.Supp. 500 (S.D.N.Y.1960)];

2. The view accepted by some courts that a foreign chartered corporation is a citizen of a

state where it has its principal worldwide place of business [*Jerguson v. Blue Dot Inv., Inc.*, 659 F.2d 31, 35 (5th Cir.1981)]; and

3. The view advocated by the plaintiffs that a foreign corporation is a citizen of the state in which it has its principal United States place of business, no matter how small its activities in that state are compared to its world-wide activities.

512 F.Supp. 764, 772 (D.K.1981); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure* § 3628 (1975, supp 1989).

10) where all correspondence is conducted.

*Sabo v. Standard Oil Co.*, 295 F.2d 893, 894 (7th Cir.1961); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986). The defendants, however, argue that the nerve center test does not determine Capitol Bankers' principal place of business. Defendants claim that Capitol Bankers is a subsidiary and "alter ego" of North American Life, and therefore North American Life's principal place of business, Ontario, Canada, is imputed to Capitol Bankers.

The general rule concerning the citizenship of a subsidiary corporation is that:

A subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business; and, accordingly, may possess dual citizenship if such place is located in a different state from that in which it is chartered.

1 Moore's Federal Practice, ¶ 0.77(1.–2) at 717.10 (1988). There are, however, some federal courts that have noted the following exception to the general rule: "There is an exception to this rule: the subsidiary takes the citizenship of the parent when it is not really a 'separate entity.'" *Burnside v. Sanders Associates, Inc.*, 507 F.Supp. 165, 166 (N.D.Tex.1980), *aff'd*, 643 F.2d 389 (5th Cir.1981); *but cf. J.A. Olson Co. v. City Of Winona, Miss.*, 818 F.2d 401 (5th Cir.1987). This exception is the "alter ego" doctrine which defendants refer to and rely upon for imputing North American Life's principal place of business to Capitol Bankers.

The defendants, however, cite no cases, and this court is unaware of any, where this doctrine has been used to create subject matter jurisdiction by imputing the parent's principal place of business to a subsidiary. *See e.g. J.A. Olson Co.*, 818 F.2d at 414; *Topp*, 814 F.2d at 837; *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 557–59 (5th Cir.1985); *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354–55 (5th Cir.1985); *Fritz*

*v. American Home Shield Corp.*, 751 F.2d 1152, 1154 (11th Cir.1985); *Bonar, Inc. v. Schottland*, 631 F.Supp. 990, 997–98 (E.D. Pa.1986); *Amarillo Oil Co. v. Mapco, Inc.*, 99 F.R.D. 602, 603–05 (N.D.Tex.1983); *de Walker v. Pueblo Int'l, Inc.*, 569 F.2d 1169, 1172–73 (1st Cir.1978); *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corporation*, 461 F.2d 1140, 1142 (3rd Cir. 1972); *Adams v. Republic Steel Corp.*, 621 F.Supp. 370, 374–75 (W.D.Tenn.1985); *Armstrong v. Goldblatt Tool Co.*, 609 F.Supp. 736, 738 (D.Kan.1985); *Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764, 774–76 (D.Kan.1981); *Fitzgerald v. Seaboard System R.R., Inc.*, 647 F.Supp. 205, 208 (S.D.Ga.1985); *R.W. Int'l, Inc. v. Borden Interamerica, Inc.*, 673 F.Supp. 654, 658–59 (D. Puerto Rico 1987); *Burnside*, 507 F.Supp. at 168. The federal district and circuit courts have repeatedly upheld the independence of the subsidiary corporation while giving lip service to the alter ego doctrine.[2] The courts' primary reason for not imputing the parent's principal place of business to the subsidiary is the Supreme Court's holding in *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

In *Cannon*, the Supreme Court considered the relationship between a parent and subsidiary corporation and upheld the independent corporate entity of the subsidiary. The critical aspect of *Cannon* is that the Court reached its holding even though it found that:

Through ownership of the entire capital stock and otherwise, the defendant [parent corp.] dominates the Alabama [subsidiary] corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other States.

---

**2.** Essentially, the alter ego doctrine has been utilized by the federal courts for the purpose of limiting federal diversity jurisdiction. This purpose is considered to further "the intent of congress 'to minimize and reduce the caseload of federal courts based upon diversity.'" *Freeman*, 754 F.2d at 558.

*Cannon*, 267 U.S. at 335, 45 S.Ct. at 251. Although *Cannon* concerned the issue of personal jurisdiction rather than subject matter jurisdiction, its reasoning and holding apply with equal force to the latter. *See Freeman*, 754 F.2d at 557–58. Thus, the federal courts have been unwilling to pierce the corporate veil of a subsidiary to create subject matter jurisdiction unless the evidence indicates that the two entities do not maintain any form of separation.

In *Leach Co. v. General Sani–Can Mfg. Corp.*, the Seventh Circuit pierced the veil of a shell corporation to obtain venue and personal jurisdiction over an out-of-state corporation (the two corporations did not have a parent-subsidiary relationship). 393 F.2d 183, 186 (7th Cir.1968). The Seventh Circuit, however, explicitly stated that *Leach* was distinguishable from *Cannon* because the two corporations involved in *Leach* "did not observe even the form of corporate separation." *Id.* at 186. As observed by the Third Circuit, however, the court in *Leach* did not clearly specify "whether it was relying on alter ego or agency theories, or on [the] fact that parties simply disregarded their separateness." *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1070 n. 4 (3d Cir.1979). More importantly, *Leach* does not consider whether or not the alter ego doctrine can be used to impute the principal place of business of a parent corporation to a subsidiary. Thus, although informative, the Seventh Circuit's holding in *Leach* does not directly address the issue currently before this court.

The Fifth Circuit, however, has considered the use of the alter ego doctrine to create federal diversity jurisdiction and has held "that the alter ego doctrine may not be used to create diversity jurisdiction by ignoring the principal place of business of a subsidiary corporation and imputing to it the principal place of business of the parent." *J.A. Olson Co.*, 818 F.2d at 414. The Fifth Circuit stated that it reached this conclusion because permitting the use of the alter ego doctrine to create jurisdiction would allow a party to pick and choose its places of citizenship in order to create federal jurisdiction, and this choice directly contradicts Congress' intention of limiting federal diversity jurisdiction. *Id.* at 413–14.

The defendants argue that the Fifth Circuit's holding goes against the weight of authority and is "inherently flawed." Defendants claim that the alter ego doctrine as put forth by the First Circuit in *Topp* is the proper analysis for determining a subsidiary's principal place of business. In *Topp*, the First Circuit's threshold question was whether or not the subsidiary was the alter ego of the parent. The court considered the following factors as being important in making the alter ego determination:

1) subsidiary maintaining its own ledger;
2) subsidiary maintaining its own corporate minutes book and register of unissued stock;
3) subsidiary maintaining its own bank accounts;
4) subsidiary maintaining its own executive offices;
5) subsidiary filing its own federal and state income and unemployment taxes, social security contributions and excise taxes; and
6) subsidiary's presentation of itself as a separate company.

*Topp*, 814 F.2d at 836–37.

The most important aspect of the First Circuit's analysis is that the factors it considers when answering the threshold alter ego question are essentially identical to the factors which the Seventh Circuit considers in its nerve center test. *Compare Topp*, 814 F.2d at 836–837 *with Sabo*, 295 F.2d 893, 894 [*and*] *Kanzelberger*, 782 F.2d 774, 777. Although there may be some debate as to the weight each factor should receive, the Seventh Circuit's nerve center analysis essentially swallows up and provides an identical outcome as the alter ego doctrine.

 The outcome of the two tests are identical because if a subsidiary corporation is merely a shell veiled only by its formal incorporation, then the nerve center test will lead to the conclusion that the subsidiary's principal place of business is

identical to that of the parent. In other words, the exceptional circumstances which the First Circuit envisions for disregarding the subsidiary's corporate veil also would lead to the conclusion under the nerve center test that the subsidiary's principal place of business is identical to that of the parent. The alter ego doctrine merely creates an unneeded step in determining a subsidiary's principal place of business. Thus, in keeping with the Seventh Circuit's view that "[j]urisdiction ought to be readily determinable," *Wisconsin Knife Works,* 781 F.2d at 1282, this court finds that the alter ego doctrine is inapplicable for determining a subsidiary corporation's principal place of business.

■ Applying the Seventh Circuit's nerve center test to Capitol Bankers leads to the conclusion that Capitol Bankers' principal place of business is Wisconsin for the following reasons:

1) Capitol Bankers' principal and general office is located in Milwaukee, Wisconsin (Beightol Aff. Exh. 1);

2) Capitol Bankers' Chief Executive Officer, President, and Chairman of the Board, Douglas B. Stevens, resides in Wisconsin (Stevens Amend. Aff. ¶ 2 & Bradford Aff. ¶ 8); In addition, there is no evidence that any of Capitol Banker's department heads live in Ontario, Canada, while the evidence indicates that over 90% of Capitol Bankers' employees reside in Wisconsin (Beightol Aff. ¶ 17);

3) the primary location of Capitol Bankers' books and records is Wisconsin (Beightol Aff. Exh. 1);

4) Capitol Bankers' revenues are collected in Milwaukee, Wisconsin and its expenses and benefits are disbursed from Milwaukee, Wisconsin (Beightol Aff. ¶¶ 13–14);[3]

5) Capitol Bankers' banking affiliate, First Bank Milwaukee, is based in Milwaukee, Wisconsin (Beightol Aff. ¶ 15);

6) Capitol Bankers' board of directors meetings have been held in Milwaukee, Wisconsin since 1979 (Beightol ¶ 18);

7) orders for Capitol Bankers' products, insurance policies, are filled out of the Milwaukee, Wisconsin office (Beightol Aff. ¶ 9); In addition, Capitol Bankers does a greater dollar volume of business in Wisconsin than any other state or country, and Capitol Bankers is not licensed to do business in Canada (Beightol Aff. Exh. 1);

8) payments for Capitol Bankers' insurance policies are received by the Milwaukee, Wisconsin office, and insurance policies are surrendered to this same office (Beightol Aff. ¶¶ 8, 13 & Exh. 3); and

9) correspondence with Capitol Bankers is conducted through the Milwaukee, Wisconsin office (Beightol Aff. ¶¶ 8–9) and Capitol Bankers presents itself to the public as a separate entity (Stevens Amend. Aff. Exh. B).

This court also notes that consistent with the reasoning discussed herein, Wisconsin also is Capitol Bankers' principal place of business when the alter ego doctrine as put forth by the First Circuit in *Topp* is utilized. As discussed above, Capitol Bankers maintains its own corporate books, records, bank account, and executive offices. Capitol Bankers also presents itself to the public as being a separate corporate entity from North American Life[4] and has maintained the formalities required to have an independent corporate existence (Beightol Aff. ¶ 3).

The primary focus of defendants' argument is that North American Life completely dominates the decisions made by Capitol Bankers (Stevens Amend.Aff. ¶ 7). The First Circuit, however, followed the

3. This court notes that the President of Capitol Bankers, Douglas Stevens, is paid by North American Life, presumably from Ontario, Canada, but this is an exception to the normal operating procedure of Capitol Bankers (Stevens Amend.Aff. ¶ 2).

4. The opening paragraph of Capitol Bankers' February 15, 1989 press release states:

Capitol Bankers Life Insurance Company, a Milwaukee-based company specializing in individual and corporate life insurance products, experienced a strong fourth quarter in 1988 and has significantly improved its financial position through the strong backing of its parent, North American Assurance Company. (Stevens Amend.Aff.Exh. B).

Supreme Court's analysis in *Cannon* and held that this factor is not outcome determinative:

> And as discussed *supra,* the fact that a parent corporation exercises the control which is necessarily incident to the full ownership of its subsidiary is insufficient, without more, to justify ignoring the separate corporate entities....
>
> ... [A]s long as the corporate formalities were observed, as they were in this case, the fact that the subsidiary was designed as a "conduit" for CompAir Ltd. [parent] is not a reason to ignore the corporate separation....
>
> ... [W]e can discern no value in having the federal district courts get mired down in the hopeless and unnecessary task of deciphering the internal power struggles going on between a parent corporation and its subsidiaries.

*Topp,* 814 F.2d at 837; *Cannon,* 267 U.S. at 335, 45 S.Ct. at 250. Thus, considering the factors utilized by the alter ego doctrine also leads to the conclusion that Capitol Bankers' principal place of business is Wisconsin.

## II. ATTORNEY'S FEES AND COSTS

■ The plaintiffs argue that pursuant to 28 U.S.C. § 1447(c) this court should award them the attorney's fees and costs associated with their remand motion because of "the substantial evidence establishing Wisconsin as Capitol Bankers' principal place of business and the recognized law prohibiting use of alter ego doctrine to create jurisdiction." This court agrees that there is substantial evidence establishing Wisconsin as Capitol Bankers' principal place of business. The Seventh Circuit, however, has not yet determined whether or not the alter ego doctrine is applicable for determining a subsidiary corporation's principal place of business. In addition, other than *Leach,* this court is unaware of a case where the Seventh Circuit has enunciated its interpretation of the alter ego doctrine. Thus, the defendants' position in support of removal was justifiable and made in good faith.

IT IS THEREFORE ORDERED that plaintiffs' motion for remand of their com-

plaint back to the Circuit Court for Milwaukee, Wisconsin is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for an award of the attorney's fees and costs they expended on their motion to remand is denied.