**Donald NEEDHAM, an individual, and Neeco, Inc., an Oklahoma corporation, Plaintiffs,**

v.

**WEDTECH (USA), INC., a Delaware corporation, and Wedtech, Inc., a Canadian corporation, Defendants.**

No. 95–C–1211–C.

United States District Court, N.D. Oklahoma.

March 19, 1996.

Richard B. Noulles, John H. Rule, and David E. Keglovits, Gable & Gotwals, Tulsa, OK, for plaintiffs.

Steven J. Adams and Mary C. Coulson, Gardere & Wynne, Tulsa, OK, for defendants.

### ORDER

H. DALE COOK, Senior District Judge.

Currently pending before the Court is the motion filed by defendants seeking dismissal of the instant action for lack of jurisdiction, pursuant to Rule 12(b)(1) of the F.R.C.P. and 28 U.S.C. § 1332.

On December 11, 1995, plaintiffs filed the present action against defendants, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. On January 2, 1996, defendants filed motions to dismiss, citing lack of subject matter jurisdiction. On January 26, the Court entered a minute order providing the parties with additional time to conduct discovery respecting the jurisdictional issue, and setting deadlines for the filing of additional documents and authorities.

Plaintiffs are citizens and residents of Oklahoma. Defendant, Wedtech Canada, is a foreign corporation doing business in Canada. Defendant, Wedtech (USA), is incorporated in Delaware, and is authorized under the laws of Oklahoma to conduct business in Oklahoma. Wedtech (USA) conducts operations in Dewey, Oklahoma. The issue presented herein is whether complete diversity exists between the parties. Plaintiffs contend that both defendants are incorporated and have their principal place of business outside Oklahoma. Defendants contend that Wedtech (USA) has its principal place of business in Oklahoma, and, therefore, complete diversity does not exist between the parties.

■ As an initial matter, the Court recognizes that since defendants challenge the Court's subject matter jurisdiction, plaintiffs bear the burden of proving its existence. *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 914 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994). Plaintiffs attempt to invoke diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides that district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds $50,000 and is between citizens of different states. Section 1332(c)(1) provides that a corporation shall be deemed to be a citizen of any state in which it is incorporated and of the state where it has its principal place of business.

■ The Tenth Circuit in *Amoco* stated that the determination of a corporation's principal place is a question of fact. *Id.* In resolving the issue of where a corporation's principal place of business is located, the Tenth Circuit adopted the "total activity" test. The "total activity" approach considers several factors, such as the location of the corporation's administrative offices, nerve center, production facilities, employees, etc. *Id.* The test then balances these factors in light of the specific facts of each case. The "determination of a corporation's principal place of business does not hinge on one particular facet of corporate operations, but on the total activity of the company considered as a whole." *Id.*

■ Plaintiffs assert that the total activities of Wedtech (USA) demonstrate that the principal place of business of Wedtech (USA) is located outside Oklahoma. Plaintiffs point to Wedtech (USA)'s Certificate of Qualification filed with the Oklahoma Secretary of State, in which Wedtech (USA) indicates that its principal of business is located in Ontario, Canada. Plaintiffs also point to the fact that Wedtech (USA) and Wedtech Canada share the same president and the same directors. Some of Wedtech Canada's officers also serve as officers of Wedtech (USA). Plaintiffs also assert that Wedtech (USA) and Wedtech Canada are substantially linked to one another and that Wedtech (USA) could not survive without Wedtech Canada's financial support and continued assistance. Additionally, Wedtech Canada owns all the stock of Wedtech (USA), and Wedtech Canada guaranteed Wedtech (USA)'s long-term debt. Wedtech Canada provided Wedtech (USA) with non-interest bearing loans with no fixed term of repayment. Expenses of Wedtech (USA) are paid from a Wedtech Canada account at a bank in Canada. Plaintiffs further contend that Wedtech Canada has considerable control over Wedtech (USA)'s operations; Wedtech Canada has set prices for Wedtech (USA) products and Wedtech Canada approves color matching for Wedtech (USA). Plaintiffs argue that Wedtech Canada and Wedtech (USA) are so intricately related that they are in essence one entity, with their principal place of business outside of Oklahoma.

Conversely, defendants point to the fact that Wedtech (USA)'s offices, plant, production facilities and assets are located in Oklahoma. Wedtech (USA)'s employees live in Oklahoma. Wedtech (USA) maintains separate corporate records in Oklahoma, and its employees are paid from a bank in Oklahoma. Wedtech (USA) issues purchase orders and invoices from Dewey, Oklahoma. Defendants represent that Wedtech (USA) competes in a market separate from Wedtech Canada. Wedtech (USA) enters into its own contracts, and maintains its own audited financial statements. Defendants acknowledge that management decisions are made by John Lefas, the president of Wedtech (USA)

and Wedtech Canada, although most routine decisions are made in Oklahoma. Defendants further acknowledge that some accounting and managerial services are provided by Wedtech Canada to Wedtech (USA). Furthermore, the asset purchase agreement at issue in this case was executed in Oklahoma.

Based upon the foregoing, plaintiffs have not convinced the Court that Wedtech (USA)'s principal place of business is located outside Oklahoma. Plaintiffs offer much detail concerning the corporate structure of Wedtech (USA) and its interrelation with Wedtech Canada. Plaintiffs have demonstrated that Wedtech Canada exercises considerable managerial control over Wedtech (USA) and that Wedtech (USA) is dependent upon Wedtech Canada for its very existence. However, the Court concludes that such a showing does not establish that Wedtech (USA)'s principal place of business is located outside Oklahoma under the "total activity" test. That test does not focus solely upon the amount of control or influence exerted over a subsidiary by its foreign parent, nor does it focus primarily upon where corporate decisions are made. If the "total activity" test focused solely upon such areas, the test would essentially merge with the "nerve center" test, an approach specifically rejected by the Tenth Circuit in *Amoco*. Rather, the "total activity" test focuses not only upon where a corporation's nerve centered is located, but also upon where its production facilities, plant, employees, etc., are located. Demonstrating that Wedtech Canada owns all the stock of Wedtech (USA), that Wedtech Canada offers financial and managerial support to Wedtech (USA), or that Wedtech (USA) has previously indicated that its principal place of business is in Canada, is not dispositive of the jurisdictional issue.

It is clear that Wedtech (USA) conducts its daily operations in Oklahoma. Wedtech (USA) maintains its production facilities in Oklahoma, it employs Oklahoma residents, it pays its Oklahoma employees from a bank account located in Oklahoma, it enters into contracts and agreements in Oklahoma, its assets are located in Oklahoma, and its offices are located in Oklahoma. John Lefas,

president of both defendants, testified that Dewey, Oklahoma, is the worldwide technical service center for both Wedtech (USA) and Wedtech Canada. Although Wedtech (USA) and Wedtech Canada are associated to a certain degree, it is undisputed that Wedtech (USA) is legally recognized as a separate corporate entity from Wedtech Canada. As such, Wedtech (USA) is capable of having its own principal place of business separate and apart from its parent, Wedtech Canada. The Court therefore reaches the inescapable conclusion that, under the "total activity" test, Wedtech (USA) conducts the majority of its operations in Oklahoma, and, therefore, its principal place of business is located in Oklahoma.

■ Plaintiffs further allege that Wedtech (USA), being a wholly-owned subsidiary of Wedtech Canada, is nothing more than the alter ego of its parent. Consequently, plaintiffs argue that jurisdiction should be determined with respect to Wedtech Canada's principal place of business, rather than Wedtech (USA)'s. This "alter ego" argument has been considered and rejected by several federal courts.

■ The general rule is well-established that a subsidiary corporation which is incorporated as a separate entity from its parent is considered to have its own principal place of business. *Topp v. CompAir Inc.*, 814 F.2d 830, 835 (1st Cir.1987); *Schwartz v. Electronic Data Systems, Inc.*, 913 F.2d 279, 283 (6th Cir.1990). This rule applies even when a parent owns all the stock of the subsidiary and exercises control over the subsidiary's operations. *Schwartz*, 913 F.2d at 283. Moreover, "where the corporate separation between a parent and subsidiary, 'though perhaps merely formal,' is 'real' and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise." *Topp*, 814 F.2d at 836 (quoting *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405, 410 (N.D.Cal.1970), and citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337, 45 S.Ct. 250, 251–52, 69 L.Ed. 634 (1925)). "When formal separation is maintained be-

tween a corporate parent and its ... subsidiary, federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent." *Schwartz,* 913 F.2d at 283. Here, the corporate separation between Wedtech Canada and Wedtech (USA) is real; it is "not pure fiction." *Cannon Mfg. Co.,* 267 U.S. at 337, 45 S.Ct. at 251. "Generally, the separate corporate status of a parent corporation and its subsidiary will be recognized. This is true even where the parent corporation owns all the shares in the subsidiary and the two enterprises share directors and officers." *McKinney v. Gannett Co., Inc.,* 817 F.2d 659, 665–666 (10th Cir.1987). Thus, "even if the parent corporation exerts a high degree of control ..., and even if the separateness is perhaps only formal, the subsidiary's place of business is controlling for diversity purposes if the corporate separation is real and carefully maintained." *U.S.I. Properties Corp. v. M.D. Construction Co.,* 860 F.2d 1, 7 (1st Cir.1988), *cert. denied,* 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989).

The "alter ego" exception to the general rule has thus not found support in federal decisions. Plaintiffs have not cited any cases in which the "alter ego" exception has been used to create subject matter jurisdiction in a diversity case by imputing the parent's principal place of business to the subsidiary. Indeed, the case law supports the exact opposite view. "The federal district and circuit courts have repeatedly upheld the independence of the subsidiary ... while giving lip service to the alter ego doctrine." *Beightol v. Capitol Bankers Life Ins. Co.,* 730 F.Supp. 190, 193 (E.D.Wis.1990). With respect to jurisdictional issues, the alter ego doctrine has instead been employed for the narrow purpose of *limiting* diversity jurisdiction, in order to effectuate the congressional intent of minimizing and reducing the caseload of federal courts based upon diversity. *Id.* at n. 2 (citing *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 558–559 (5th Cir.1985) (applying alter ego doctrine to diversity jurisdiction case, but limiting holding to those instances in which imputing the citizenship of a subsidiary to its parent under the doctrine serves the congressional purpose of *denying* federal diversity jurisdiction)). In *J.A. Olson*

*Co. v. City of Winona,* 818 F.2d 401, 414 (5th Cir.1987), the Fifth Circuit held that "the alter ego doctrine may not be used to create diversity jurisdiction by ignoring the principal place of business of a subsidiary corporation and imputing to it the principal place of business of the parent." Furthermore, cases "that have found the corporate parent's citizenship to control have not rejected the 'general rule.' Rather, in those cases the courts have determined on the basis of particular facts that a subsidiary's principal place of business was the same as that of the corporate parent, or that the subsidiaries were not actually separate corporate entities." *Schwartz,* 913 F.2d at 283–284. The Eleventh Circuit in *Fritz v. American Home Shield Corp.,* 751 F.2d 1152, 1153 (11th Cir. 1985), also rejected plaintiffs' alter ego argument, stating that this "novel argument has no merit under the clear statutory language and well-settled case law." Hence, when "a subsidiary chooses to be incorporated separately from its parent, for whatever reason, it is treated as an independent entity for purposes of determining federal court jurisdiction." *Schwartz,* 913 F.2d at 283. In *Glenny v. American Metal Climax, Inc.,* 494 F.2d 651, 655 (10th Cir.1974), the Tenth Circuit stated that a district court is "not compelled to retain jurisdiction in a case where diversity is satisfied only by piercing the corporate veil."

■ The Court therefore rejects plaintiffs' claim that Wedtech (USA) is merely the alter ego of Wedtech Canada, and the Court will not permit Wedtech Canada's principal place of business to be imputed to Wedtech (USA) to satisfy the complete diversity requirement. Wedtech (USA) is its own legal entity with its own principal place of business. It is well-settled that Congress intended to restrict and limit federal diversity jurisdiction, and this intent is further evinced by providing for multiple corporate citizenship in 28 U.S.C. § 1332(c). *Freeman,* 754 F.2d at 558. "This statute ... [has] consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff.... It is a fundamental precept that

federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction ... must be neither disregarded nor evaded." *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 373–374, 98 S.Ct. 2396, 2402–2403, 57 L.Ed.2d 274 (1978). Moreover, the "jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation." *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951). Congress' requirement of complete diversity would certainly be thwarted and evaded if this Court were to give effect to the alter ego doctrine espoused by plaintiffs. For purposes of diversity jurisdiction, the alter ego doctrine cannot be used to create subject matter jurisdiction by imputing one entity's principal place of business to another entity.

Accordingly, since the Court concludes that Wedtech (USA)'s principal place of business is in Oklahoma, and since the Court further rejects plaintiffs' argument that Wedtech (USA) is merely the alter ego of Wedtech Canada for diversity purposes, defendants' motions to dismiss based upon lack of complete diversity jurisdiction are hereby **GRANTED**.

**IT IS SO ORDERED.**